UNITED STATES of America,
Petitioner,

v.

**CHURCH OF SCIENTOLOGY OF BOSTON, INC., and Antonia Chrambanis,
Secretary, Respondents.**

**M.B.D. No. 90–302–T.**

United States District Court,
D. Massachusetts.

June 18, 1990.

George B. Henderson II, Asst. U.S. Atty., Deborah S. Meland, Tax Div., Dept. of Justice, Washington, D.C., for petitioner.

Michael Lee Hertzberg, Eric M. Lieberman, Rabinowitz, Boudin, Standard, Krinsky & Lieberman P.C., New York City,

Earle C. Cooley, Cooley Manion Moore & Jones P.C., Boston, Mass., for respondents.

## MEMORANDUM

TAURO, District Judge.

The Internal Revenue Service ("IRS") petitions for the enforcement of its summons issued on October 13, 1989 to the Church of Scientology of Boston, Inc. ("CSB"). In support, the IRS asserts that "[t]he books, records, papers and other data described and demanded by the summons are relevant and necessary to ... determine whether it is entitled to exempt status under Code Secs. 501(a) and 501(c)(3) during the calendar years 1985, 1986 and 1987, as a church organized and operated exclusively for religious purposes."[1]

CSB opposes the IRS petition, raising issues that merit somewhat extensive discussion.

### I.

On November 7, 1988, IRS Regional Commissioner for the Northeast, Cornelius Coleman, sent a Notice of Tax Inquiry to CSB stating that he had reason to believe that the church might have lost its tax exempt status, pursuant to 26 U.S.C. §§ 501(a) and 501(c)(3), because of operating for a substantial non-exempt commercial purpose, and because of the inurement of benefits to private individuals. In that letter, the IRS asked CSB five questions upon whose answers apparently hinged whether further inquiry would be necessary. After receiving detailed responses from CSB, the IRS determined that examination of CSB's books, records, and activities was necessary to answer the underlying question of entitlement to exemption.

On December 20, 1988, CSB was sent a Notice of Church Examination. *See* 26 U.S.C. § 7611(b)(2), (3). In the notice, the IRS informed CSB of its statutory right to request a conference, and it asked CSB to provide certain materials for examination.

CSB requested a conference which ultimately took place on February 22 and 23, 1989. In May, 1989, the IRS proposed an-

other conference for July, and requested information concerning twenty designated areas. It also requested sixteen categories of documents.

CSB provided written responses with respect to the twenty enumerated areas prior to the follow-up conference in July. It did not, however, produce the sixteen categories of documents requested. As well, it did not submit any documents in response to three subsequent IRS requests, one of which sought an additional nine categories of documents.

The IRS issued a summons on October, 13, 1989, specifically directing Antonia Chrambanis, as CSB's agent, to appear on October 27, 1989 and produce all requested documents. After CSB failed to comply, the government brought this petition to enforce its summons.

### II.

The IRS has broad authority with respect to tax inquiries. Congress, however, has scaled back these powers with respect to church tax inquiries. *See* 130 Cong.Rec. S 4485–86 (daily ed. April 12, 1984) ("[T]his legislation is designed to give churches a special audit procedure to require the IRS to take greater care in the examination of churches than is required under the current law...."). Reflective of this Congressional purpose, Title 26 U.S.C. § 7611 now provides certain procedural protections to insure that the IRS does not embark on an impermissibly intrusive inquiry into church affairs.

### A.

A church tax inquiry can only begin if: "... an appropriate high-level Treasury official reasonably believes (on the basis of facts and circumstances recorded in writing) that the church may not be exempt, by reason of its status as a church, ... or may be carrying on an unrelated trade or business ... or otherwise engaged in activities subject to taxation...."

---

1. Declaration of Revenue Agent Arnold ("Arnold") at p. 18.

26 U.S.C.A. § 7611(a)(2) (West Supp.1990). Proper notice, including an explanation of the concerns which gave rise to the inquiry, and a statement of the general subject matter of the inquiry, must be given to the subject church. 26 U.S.C. § 7611(a)(3)(B)(i). The church must also be apprised of applicable administrative and constitutional provisions with respect to the inquiry, as well as relevant statutory citations. 26 U.S.C. § 7611(a)(3)(B)(ii). Both records and activities may be inquired into, but only to the extent necessary to determine either liability for tax (or its extent) or whether the entity really was a church for the relevant period. 26 U.S.C. § 7611(b)(1). The contents of any examination notice must include a copy of the tax inquiry notice, a description of the church records and activities sought to be examined, an offer to have a conference with the IRS "in order to discuss, and attempt to resolve, concerns relating to the examination," and a copy of all documents used which are required to be disclosed by the Freedom of Information Act. 26 U.S.C. § 7611(b)(3). Examinations must be completed within two years of the examination notice date. 26 U.S.C. § 7611(c)(1)(A). The secretary may revoke tax-exempt status by finding that the putative church is not entitled to exemption, and may then send the church a notice of deficiency. 26 U.S.C. § 7611(d).

### B.

Tax summonses have long been judged by the standard set forth in *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964). Under *Powell,* to obtain judicial enforcement of an IRS summons, the government must show that (1) the investigation will be conducted pursuant to a legitimate purpose; (2) the inquiry may be relevant to that purpose; (3) the information sought is not already in the possession of the IRS; and, (4) the administrative steps required by the Internal Revenue Code for issuance of a summons were followed.

With respect to church tax inquiries, several courts have interpreted *Powell's* relevancy standard to be one of *necessity. See United States v. Holmes,* 614 F.2d 985, 988 (5th 1980); [2] *United States v. Church of World Peace,* 775 F.2d 265, 267 (10th Cir.1985) (§ 7611 "make[s] it clear that the IRS examination of church records may only be made to the 'extent necessary' to determine tax exempt status...."). *See also United States v. Church of Scientology Flag Service Org., Inc.,* 90–1 U.S.T.C. ¶ 50,019, 1989 WL 165589 (M.D.Fla. Dec. 22, 1989) ("Absent a finding that each of the items sought in the summons is necessary for the Service to determine the tax status of the Church, the Court cannot enforce the summons.").

■ In addition, the *Powell* test now necessarily incorporates the procedural requirements of § 7611 by hinging summons enforcement upon a finding that "the administrative steps required by the Code have been followed." This means that the IRS must have complied with the procedural requirements of § 7602 (guiding the summons authority). In the church inquiry context, however, even more is required. *See* 26 U.S.C. § 7611(a)(1) (conditioning church tax inquiry upon compliance with both reasonable belief and notice requirements).

### III.

■ CSB has raised a number of objections to the instant enforcement petition. But, this court need not reach all the proffered issues, because it finds that the IRS has failed to meet the requirements of the modified *Powell* test.[3]

---

**2.** *Holmes* held that Congress pruned back the second prong of the *Powell* test in 1969, when it added subsection (c) to 26 U.S.C. § 7605 which limited inquiry into religious activities and church finances "to the extent necessary." This church-protective standard appears to have been imported into § 7611 as well. *See* 26 U.S.C. § 7611(b)(1)(A), (B).

**3.** CSB contends that the IRS failed to comply with several of its obligations under § 7611, particularly with respect to both the conference and reasonable belief requirements. Moreover, CSB raises several First Amendment challenges to the IRS's attempted enforcement. Federal courts should first decide nonconstitutional issues that obviate the need for adjudication of

In its brief, the IRS conceded that CSB could avoid enforcement of the summons by introducing some evidence that the *Powell* requirements were not met. . *See Government's Memo in Support of Petition to Enforce ("Government's Memo ")*, at 15 (citing *United States v. Freedom Church*, 613 F.2d 316, 319 (1st Cir.1979)). CSB has done so. Most notably, CSB points out that the government has failed to demonstrate a legitimate purpose for its tax inquiry into the years 1985–1987, or to allege sufficiently that the documents sought for examination are necessary to a legitimate purpose.

### A.

The IRS argues broadly that an inquiry aimed at determining whether a church is properly exempt is one unquestionably conducted pursuant to a legitimate purpose. Further, the IRS implies that a presumption of legitimate purpose attaches to these sorts of inquiries that can be rebutted only by a showing of bad faith. While CSB has furnished what it sees as a voluminous record of bad faith on the part of the IRS, this thorny factual issue need not be reached, because a dispositive infirmity in the IRS's pleadings exists.

The IRS, itself, circumscribed the scope of its CSB tax inquiry to encompass only the question of its tax status for the years 1985–87.[4] CSB points out that, because the IRS's inquiry is directed to past years, it necessarily engages the protective machinery of 26 U.S.C. § 7805, and regulations promulgated thereunder, pertaining to the retroactive revocation of tax exempt status.

 The IRS's purpose, if its "reasonable belief" is vindicated, is to revoke CSB's tax exempt status for the years 1985–1987, a retroactive revocation. In order to effect a retroactive revocation, however, the IRS must show that either the organization "omitted or misstated a material fact" in its original exemption application, or that the organization has been "operated in a manner materially different from that originally represented...." *See* 26 C.F.R. (Treas.Reg.) § 601.201(n)(6)(i);[5] *Virginia Education Fund v. Comm'r of Internal Revenue Service*, 85 T.C. 743 (1985). The IRS has made no allegations in its pleadings as to the existence of any of the underlying requisites for retroactive revocation.

The unique status afforded churches by Congress requires that the IRS strictly adhere to its own procedures when delving into church activities. *Cf., e.g.,* Church Audit Procedures Act: Hearing Before the Subcommittee on Oversight of the Internal Revenue Service of the Senate Committee on Finance, 98th Cong., 1st Sess., 61 (1983) (testimony of Deputy Assistant Sec'y of

constitutional questions. *See, e.g., Spector Motor Service, Inc. v. McLaughlin*, 323. U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable.").

4. Specifically, it claimed that:
 [t]he books, records, papers and other data described and demanded by the summons are relevant and necessary to complete the examination of CSB[ ] and determine whether it is entitled to exempt status under Code Secs. 501(a) and 501(c)(3) during the calendar years 1985, 1986 and 1987, as a church organized and operated exclusively for religious purposes.
 *Government's Memo,* at 5.

5. 26 C.F.R. § 601.201(n)(6)(i) provides, in pertinent part, that:
 [t]he revocation or modification [of an exempt status] may be retroactive if the orga-

nization omitted or misstated a material fact, operated in a manner materially different from that originally represented, or engaged in a prohibited transaction of the type described in subdivision (vii) of this subparagraph. In any event, revocation or modification will ordinarily take effect no later than the time at which the organization received written notice that it exemption ruling of determination letter might be revoked or modified.

§ 601.201(n)(6)(vii) provides that:
[i]f it is concluded that an organization that is subject to the provisions of section 503 of the Code intered [sic] into a prohibited transaction for the prupose [sic] of diverting corpus or income from its exempt purpose, and if the tranaction [sic] involved a substantial part of the corpus or income of the organization, its exemption is revoked effective as of the beginning of the of the taxable year during which the prohibited transaction was commenced.

Treasury) (assuring conferees that requirement of reasonable belief based on "facts and information recorded in writing" serves as a safeguard against the IRS "going on a fishing expedition" into church books and records). As CSB has been recognized as an exempt church pursuant to 26 U.S.C. § 501(c)(3) since 1975, it is clearly entitled to such safeguards. *See Virginia Education Fund*, 85 T.C. 743 (recognizing that, although the Commissioner ordinarily has broad discretion in deciding whether to revoke a ruling retroactively, "the Secretary has limited the Commissioner's discretion to revoke retroactively a favorable ruling on exempt status[,]" citing § 601.201(n)(6)(i)).

The IRS has not addressed these regulatory requirements in its petition. Because the record is devoid of any showing either that a material fact was misstated or omitted in connection with CSB's original exemption application, or that CSB is now "operated in a manner materially different from that originally represented," this court must conclude that the IRS has failed to show a legitimate purpose for its tax inquiry into the years 1985–1987.

### B.

■ Even assuming, *arguendo*, the legitimacy of the government's purpose, there has not been a demonstration of necessity for the IRS's massive document request.[6] Such a showing is expressly required by statute. *See* 26 U.S.C. § 7611(b)(1). The IRS's citations to non-church cases adopting the "relevance" standard do not provide support for the proposition that it has met the applicable "necessity" standard.

The IRS's only attempt to satisfy its burden with respect to the "necessity" showing comes in the declaration of the IRS case Revenue Agent Arnold. Without

---

**6.** CSB has estimated that the request covers 200,000 pages of material. *See Chrambanis Decl.,* ¶ 3.

**7.** The government, once again citing a non-church case, implies that any element of its required *prima facie* showing can be established simply by an affidavit of the investigating agent averring its existence. *See Government's Memo,* at 14 (citing *United states v. White*, 853 F.2d 107, 111 (2d Cir.1988)). Reliance upon *White* is mis-

---

stating facts or circumstances to support such a belief, Arnold reiterates the position of senior IRS officials that CSB may no longer be exempt. *See Walter Decl.,* ¶ 4. Arnold simply asserts, without explanation, that "books, records and other data are relevant and necessary" to CSB's examination. *Id.* at ¶ 17. This failure to link in any way particular documents to explanations of their necessity to the instant examination proves fatal.[7]

### IV.

Both for failure to show a legitimate purpose for its inquiry into CSB's books and records for the years 1985–87, and for failure to proffer facts establishing the necessity of any of the requested documents, the government's Petition To Enforce Internal Revenue Service Summons must be denied.

An order will issue.

---

placed. Special considerations attach in church tax inquiries. Based upon these protections for churches, clarified by legislative history, this court concludes that an affidavit swearing the existence of the *Powell* elements, without reference to specific facts or circumstances supporting such a belief, is insufficient to engage the courts' enforcement power to delve into the records and activities of churches.