**UNITED STATES of America, Petitioner, Appellant,**

v.

**CHURCH OF SCIENTOLOGY OF BOSTON, INC., et al., Respondents, Appellees.**

**No. 90–1900.**

United States Court of Appeals, First Circuit.

Heard Feb. 5, 1991.

Decided May 29, 1991.

Rehearing Denied Aug. 9, 1991.

John A. Dudeck, Jr. with whom Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Charles E. Brookhart, Attys., Tax Div., Dept. of Justice, and Wayne A. Budd, U.S. Atty., were on brief for petitioner-appellant.

Michael Lee Hertzberg, with whom Eric M. Lieberman, Hillary Richard, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, Earle C. Cooley, and Cooley, Manion, Moore & Jones, P.C., were on brief for respondents-appellees.

Before BREYER, Chief Judge, and CAMPBELL and TORRUELLA, Circuit Judges.

BREYER, Chief Judge.

The Internal Revenue Service, investigating the 1985, 1986, and 1987 tax liability of the Church of Scientology of Boston, has asked the district court to enforce a summons for church records. The district court refused to enforce the summons because, in its view, 1) the church records were not "necessary to determine the [church's tax] liability," 26 U.S.C. § 7611(b)(1)(A), and 2) the IRS had not issued the summons for a proper purpose. 739 F.Supp. 46. The IRS now appeals the district court's refusal to enforce the summons. After reviewing the record, we agree with the district court that the IRS has not shown that the church records requested are "necessary" to its investigation. And, we affirm the district court's refusal to enforce the summons for that reason.

I

*The Basic Issue*

A special provision of the Internal Revenue Code ("Code"), entitled "Restrictions on Church Tax Inquiries and Examinations," provides the governing legal standard. It says that the IRS may examine "church records" only "to the extent necessary to determine" the church's tax "liability." 26 U.S.C. § 7611(b)(1). The basic issue in this case concerns the words "to the extent necessary to determine." Do those words impose a rather high preliminary legal hurdle, as the word "necessary" seems to suggest? Or, as the IRS argues, does careful analysis show the standard they impose is really no greater than one of "relevance?"

The answer to this question determines the outcome of this appeal. That is because the record makes clear that the IRS summons before us cannot satisfy any standard higher than simple "relevance." The summons, set forth in the Appendix, is detailed and calls for the production of a massive amount of material, but it does not explain *how* or *why* compliance is "necessary" to determine the church's possible tax liability. An affidavit of an IRS agent accompanies the summons. However, the affidavit merely states a conclusion, namely *that* compliance is "necessary to determine" the church's tax liability; it does not explain in any detail *how* or *why* the documents for which it calls are "necessary" either. The prior history of IRS/Scientology dealings, contained in the record, consists of lists of questions that the IRS asked and that the Church answered (in detail). Nothing in that history explains to

us *how* or *why* the particular documents that the summons lists are "necessary" to the investigation. The church has challenged the IRS's claim that the documents are "necessary" and the IRS primarily argues that it has shown the summons to be "necessary" *because "necessary" means "relevant."* Thus, we shall assume that the summons itself, read in light of the record, demonstrates that the documents it seeks may be *relevant* to the IRS tax inquiry, but we hold, giving particular attention to the district court's identical conclusion, *see United States v. Coates,* 692 F.2d 629, 634 (9th Cir.1982), that the summons fails to meet any more exacting standard. And, we shall turn to the question of whether a showing of simple relevance satisfies the statutory test.

To understand the specific legal question, the reader must understand the basic legal tests applicable to the typical IRS summons, a summons that is not aimed at church documents. In a case called *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) the Supreme Court held that the IRS is entitled to court enforcement of a summons for documents as long as it shows: (1) that "the investigation will be conducted pursuant to a legitimate purpose," (2) *"that the inquiry may be relevant to the purpose,"* (3) "that the information sought is not already within the Commissioner's possession," and (4) "that the administrative steps required by the Code have been followed." *Id.* at 57–58, 85 S.Ct. at 255 (emphasis added). As the IRS points out, this test, and, in particular, the "relevancy" requirement (which we have underlined) is not very difficult to satisfy. Indeed, the Ninth Circuit has said that to do so, the government need show only that the summoned documents *"might throw light upon* the correctness of the taxpayer's returns." *United States v. Ryan,* 455 F.2d 728, 733 (9th Cir.1971) (emphasis added).

The special "Church Tax Inquiries and Examination" provision of the Code, however, governs the summons before us. That provision offers churches special protections. It says that, even to begin an investigation of a church's tax liability,

> [A]n appropriate high-level Treasury official [must] reasonably believe[ ] (on the basis of facts and circumstances recorded in writing) that the church—
>
> (A) may not be exempt, by reason of its status as a church, from tax under section 501(a), or
>
> (B) may be carrying on an unrelated trade or business ... or [is] otherwise engaged in activities subject to taxation under this title.

26 U.S.C. § 7611(a)(2). The same section adds that the IRS may

> begin a church tax examination only if [the reasonable belief requirements just mentioned are satisfied] *and* such examination may be made only—
>
> (A) in the case of church records, *to the extent necessary to determine the liability for, and the amount of, any tax imposed by this title* and
>
> (B) in the case of religious activities, *to the extent necessary to determine whether an organization claiming to be a church is a church for any period.*

26 U.S.C. § 7611(b)(1) (emphasis added).

The critical legal question that the IRS raises concerns the meaning of the underlined language—"to the extent necessary" —in relation to the "may be relevant" test of *Powell.* In particular, the IRS argues *"that no showing beyond that required under* Powell *is needed in church summons cases."* If the IRS is right in its view of the meaning of this phrase, it is entitled to enforcement of the summons; otherwise (given the record before us), it is not.

## II

### *The Meaning of "to the Extent Necessary"*

In trying to show that the word "necessary" in context means no more than "may be relevant," the IRS faces several formidable obstacles. The words of the statute itself, "to the extent necessary to determine liability," do not *seem* on their face to mean that the IRS can obtain church documents by showing only a possible rele-

vance to an inquiry or that they "might throw light upon" the correctness of a church's return. Moreover, a 1969 predecessor statute used these same words, stating

> no examination of the books of account of [a church] ... shall be made other than to the extent necessary to determine the amount of tax imposed by this title.

26 U.S.C. § 7605(c), *repealed by* Section 1033 of the Tax Reform Act of 1984, Pub.L. No. 98–369, 98 Stat. 494, codified at 26 U.S.C. § 7611. And, the federal courts uniformly interpreted these words to mean what they said. *See United States v. Church of World Peace*, 775 F.2d 265, 267 (10th Cir.1985) ("IRS examination of church records may only be made to the 'extent necessary' "); *United States v. Coates*, 692 F.2d 629, 634 (9th Cir.1982) (affirming district court application of the "necessity" standard); *United States v. Dykema*, 666 F.2d 1096, 1102 (7th Cir. 1981), *cert. denied*, 456 U.S. 983, 102 S.Ct. 2257, 72 L.Ed.2d 861 (1982) ("the examination of books of account must be limited to that which is necessary to determine the amount of the tax imposed"); *United States v. Life Science Church of America*, 636 F.2d 221, 224 (8th Cir.1980) (same); *United States v. Holmes*, 614 F.2d 985, 988 (5th Cir.1980) ("The second prong of the *Powell* test was pruned back by Congress in 1969, ... when it added [§ 7605(c) ] ..."). Further, when Congress, in 1984, reenacted this same 1969 language, the bill's sponsors said that they expected the courts to continue to interpret these words as they had done in the past. *See* 130 Cong.Rec.S. 4486 (daily ed. April 12, 1984) ("[T]o be certain churches are protected from unfounded examinations [the Bill] limits the inspection of church records to those necessary to determine the tax liability of a church ... As under present law, the IRS may examine the religious activities of an organization claiming to be a church ... only to the extent necessary to determine if the organization actually is a church.").

Faced with these obstacles, and perhaps recognizing the counter intuitive nature of its claim, the IRS makes four arguments.

First, it asks us to read the statutory provision with the emphasis on the words "tax imposed by this title." Thus, according to the IRS we should say that the statute limits an examination of church books "to the extent necessary to determine the liability for, and the amount of, any *tax imposed by this title*." The statute, so read, would use the word "necessary" in order to forbid the IRS to look at church books for purposes of determining liability for some other tax, or for purposes of determining whether the church was breaking some totally different law, or perhaps just for fun. But, assuming the IRS restricted its examination to the right *purpose*, then, says the IRS, it can look at whatever books, or documents, or records are "relevant," or would "cast some light upon," potential liability. That is to say, any examination relevant to determining the right sort of liability is a "necessary" examination.

The problem with this ingenious argument is that the rest of the statute belies it. The first provision of the "Church Tax Inquiry" provision, which we quoted at the outset of this opinion, says that the IRS cannot even begin its investigation until it "reasonably believes" the church has the relevant liability. The "tax examination" section says that, to examine books, the IRS must meet these "reasonable belief" requirements *and* it must also meet the "extent necessary" requirements. The IRS's interpretation would basically make the "and" (and the entire "extent necessary" section) redundant. Regardless, we find its interpretation strained, contrary to the view set forth in the cases we have cited above, and in conflict with the statements in the legislative history just quoted.

Second, the IRS says that two cases support its position, including one from this circuit, *United States v. Dykema*, 666 F.2d 1096 (7th Cir.1981) and *United States v. Freedom Church*, 613 F.2d 316 (1st Cir. 1979). We do not agree, however, with the IRS's reading of these two cases. Both of them involved different issues. The 1969 statute imposed special restrictions upon tax investigations of a church, but it did not make clear which *kinds* of tax investi-

gations it meant to limit. In particular, there was a dispute as to whether the restrictions applied 1) only when the IRS investigated to see if a church had unrelated business income, *see* 26 U.S.C. § 513, or 2) also when the IRS investigated whether a claimed church was really a church. *See* 26 U.S.C. § 501(c)(3); 26 C.F.R. § 1–511–2(a)(3)(ii). The *Dykema* court, like several other courts, held that the statute applied its investigatory restrictions *only* when the IRS investigated to see if the church had unrelated business income, and not otherwise. But, in respect to investigations within the statute's scope, the word "necessary" means what it says. Indeed, on the relevant issue, *Dykema* seems to hold against the IRS, for the court said that

> "the examination of corporate books of account [for the purpose of determining unrelated business income] must be limited to that which is *necessary* to determine the amount of the tax."

*Dykema,* 666 F.2d at 1102 (emphasis added).

In *Freedom Church* the issue raised was whether the 1969 statute *prohibited* all examinations of "books of account" to determine whether an organization is in fact a church. In the course of the opinion this court wrote that the *Powell* "may be relevant" standard applied to a church-related investigation, but the parties did not dispute *that* matter; the meaning of the words "to the extent necessary" was not at issue in the case. *Freedom Church,* 613 F.2d at 319 (appellant only objected that "membership and contribution lists ... are not relevant to an investigation of tax exempt status"). Thus, we do not consider this court's affirmance of the application of the relevance standard controlling on the meaning of "necessity" as used in § 7611.

Third, the IRS makes a logical argument that rests upon *Powell* itself. It notes that a different statute, relevant to *all* tax investigations, says that "no taxpayer shall be subjected to *unnecessary* examination." 26 U.S.C. § 7605(b) (emphasis added). It adds that *Powell,* in saying that the IRS could examine whatever material was "*rel-*

*evant,*" must have meant that an examination of "relevant" material was not an "unnecessary" examination. Therefore, *Powell* must have meant that an examination of relevant material was a "necessary" examination. Consequently, "to the extent necessary" means "to the extent relevant."

This argument sounds logical, but it is not. In ordinary English there is a "middle" set of circumstances that "necessary" and "unnecessary" do not completely distribute between them. For example, it is necessary that my car have gas if I am going to drive it; it is unnecessary that it have a new paint job; but, it is neither "necessary" nor "unnecessary" that I clean the windshields—to do so would simply be a wise precaution. Similarly, an investigation of whatever documents "might throw light" on the matter is not an "unnecessary" investigation, but neither can one conclude that it is "necessary." It might, for example, simply be somewhat helpful.

Fourth, and perhaps most important, the IRS says that the words "to the extent necessary," if read naturally, would hamper tax investigations significantly. How can the IRS possibly know whether the examination of a certain set of books, for example, is "necessary" to show liability unless and until it can see the books? It is absurd to expect the IRS to be able to prove liability before it starts an investigation. Thus, Congress cannot have meant courts to read this language literally. As the IRS puts it, imposing this higher standard on the IRS "would place an impossible burden on the IRS with respect to any organization that claims to be a church. Such a construction of the statute, which would nullify the summons authority of the IRS, is to be avoided."

The answer to this argument, however, is that the words do not say "to the extent necessary to *show* liability." They say "to the extent necessary to *determine* liability," *i.e.,* to decide *whether or not* there is liability. The IRS must show that the material is "necessary" to the *investigation,* not necessary *to prove liability.* The statute focuses the court's attention on the needs of a competent investigator, not the

needs of a prosecutor. It requires the IRS to explain why the particular documents it seeks will significantly help to further the purpose of the investigation. As so read, we do not believe that the standard, while stricter than "may be relevant," will impose upon the IRS unreasonably strict standards of proof when it seeks material that it needs for investigatory purposes.

In sum, we reject the IRS's argument that the *Powell* relevance standard applies to an examination of church documents. And, we hold that the present summons does not meet the stricter necessary-to-the-investigation standard.

### III

*Purpose*

The district court also held that the IRS failed to show it was proceeding for a proper purpose, namely to determine whether or not the church had tax-exempt status in the tax years in question. Since we have already held that the court's decision not to enforce the subpoena was legally proper, we need not decide whether or not the district court's decision about lack of purpose was legally correct. The IRS has argued forcefully, however, that the district court is wrong; and, it may fear that the district court's "purpose" determination would bind it in another case, say, a renewed effort to enforce a revised summons against the church. Because particular record-based circumstances may determine the outcome of this issue, because a new proceeding would likely involve different circumstances, and because we need not decide the question now, we shall not do so. But we shall state that the district court's holding on this point, not necessary to its (or our) decision, does not have any binding effect and that the court may reconsider the legitimacy of the IRS's purpose in any future proceeding.

The judgment of the district court is

*Affirmed.*

<u>A P P E N D I X</u>

# Summons

Department of the Treasury
Internal Revenue Service

In the matter of ___Church of Scientology of Boston Inc.___

Internal Revenue District of ___Brooklyn, N.Y.___     Periods December 31, 1985
                                                               December 31, 1986
                                                               December 31, 1987
The Commissioner of Internal Revenue
    Antonia Chrambanis as Secretary of
To ___Church of Scientology of Boston Inc.___

At ___448 Beacon Street, Boston, Mass. 02115___

You are hereby summoned and required to appear before ___Walter G. Arnold, Jr.___

an officer of the Internal Revenue Service to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

See Attached

**Business address and telephone number of Internal Revenue Service officer named above:**

10 Causeway Street, Room 581, Boston, Mass. 02222

Place and time for appearance:

at ___10 Causeway Street, Room 581, Boston, Mass. 02222___

on the ___27th___ day of ___October___, 19 89 at 10 o'clock __A.__ M.

Issued under authority of the Internal Revenue Code this __13th__ day of __October__ 19 89

_____  Exempt Organizations Specialis
Signature of Issuing Officer                    Title

_____  Group Manager
Signature of Approving Officer (if applicable)   Title

Original to be kept by IRS                        Form 2039 (Rev. 3-83)

# Service of Summons, Notice and Recordkeeper Certificates

(Pursuant to section 7603, Internal Revenue Code)

I certify that I served the summons shown
on the front of this form on:

| Date | Time |
|------|------|
| October 13, 1997 | 10 10 An. |

**How Summons Was Served**

☒ I handed an attested copy of the summons to the person to whom it was directed.

Antonia Chrumbanis
448 Pricson St. Buston Mass 02-115

☐ I left an attested copy of the summons at the last and usual place of abode of the person to whom it was directed. I left the copy with the following person (if any).

| Signature | Title |
|-----------|-------|
| | Exempt Organization Special |

This certificate is made to show compliance with section 7609 In ternal Revenue Code. This certificate applies only to summonses served on third-party recordkeepers and not to summonses served on other third parties or any officer or employee of the person to whose

liability the summons relates nor to summonses in aid of collection to determine the identity of a person having a numbered account or similar arrangement or to determine whether or not records of the business transactions or affairs of an identified person have been made or kept

I certify that within 3 days of serving the summons I gave notice (Form 2039 D) to the person named below on the date and in the manner indicated

Date of Giving Notice: _____ Time: _____

Name of Noticee: _____

Address of Noticee (if mailed): _____

**How Notice Was Given**

☐ I gave notice by certified or registered mail to the last known address of the noticee

☐ In the absence of a last known address of the noticee, I left the notice with the person summoned.

☐ I gave notice by handing it to the noticee

☐ I left the notice at the last and usual place of abode of the noticee. I left the copy with the following person (if any)

☐ No notice is required

| Signature | Title |
|-----------|-------|
| | |

I certify that the period prescribed for beginning a proceeding to quash this summons has expired and that no such proceeding was instituted or that the noticee consents to the examination.

| Signature | Title |
|-----------|-------|
| | |

Form 2039 (Rev. 3-83)

## ATTACHMENT

It will be necessary to provide all documents in your possession, custody or control relative to the Church of Scientology of Boston, Inc., during the period beginning January 1, 1985, and ending December 31, 1987, (unless otherwise stated) as more specifically described below. If all or part of the summoned accounting and/or financial records are maintained within an automated data processing system, then provide copies of the disks, magnetic tapes, or other machine-sensible records on which the data is stored, as well as documentation that provides a complete description of the automated data processing portion of the accounting system and those files that feed into the accounting system; documentation as to the scope of the operations sufficient to indicate: a) the application being performed, b) the procedures used in each application, and c) the controls used to ensure accurate and reliable processing; and, for all files, documentation regarding: 1) record formats (including the meaning of all "codes" used to represent and retrieve information); 2) flowcharts (systems and program); 3) label descriptions; 4) source program listings of programs that created the files; and 5) charts of accounts for the periods involved. If the information is not maintained within an automated data processing system, then provide the paper records and documents. Documents which were furnished by the Church of Scientology of Boston, Inc. in support of Form 1023, Application for Recognition of Exemption, need not be provided in compliance with this summons. However, any document which has been revised or amended since the Church of Scientology of Boston, Inc. was granted exempt status in 1975, is to be produced in compliance with this summons.

In the following description of the information sought by this summons, "CSBI" means Church of Scientology of Boston, Inc. In addition, each request for documents and records that follows includes, but is not limited to, all pertinent Scientology Scriptures, directives and orders.

1. All documents including, but not limited to, charters, articles of incorporation, agreements, by-laws and organizational charts, which describe the purpose and organizational structure of the CSBI.

2. All documents including, but not limited to, by-laws, position descriptions, annual reports and brochures, which describe the responsibilities and duties of the officers, directors and trustees of the CSBI.

3. All documents which identify those persons who served as an officer, director or trustee of the CSBI, including their names, addresses and social security numbers.

4. All documents relating to the compensation, remuneration, and financial benefits received by officers, directors and trustees of the CSBI.

5. All documents which describe those activities engaged in by the CSBI, including but not limited to statements as to whether the CSBI operates autonomously or under the supervision or control of any other entity.

6. All documents which identify and describe the activities of organizations other than the CSBI, which use any property owned, leased or otherwise possessed by the CSBI, including the property at 448 Beacon Street.

7. Original copies of any and all brochures, flyers, pamphlets and advertisements printed and distributed to members of the CSBI and/or the general public.

8a. All documents which list or otherwise identify all of the various publications, devices or equipment which were provided free of charge to CSBI members or the public through the CSBI.

8b. All documents relating to the various publications, devices or equipment sold through CSBI including, but not limited to, contracts, agreements, invoices, minutes of meetings, which list or otherwise show: 1) purchase prices, 2) sales prices, 3) quantities purchased and sold, 4) methods of sale and distribution, such as through book stores or mail order, and 5) methods for establishing purchase prices and sales prices.

9. The original minutes of all meetings held by the governing body of the CSBI,

and/or by other similar bodies or boards having authority for the Boston Church's ecclesiastical, financial, and/or corporate affairs for the calendar years ended December 31, 1983; December 31, 1984; December 31, 1985; December 31, 1986; and December 31, 1987.

10. All original books of account and records of the CSBI which report assets, liabilities, receipts and disbursements including, but not limited to, the following:

A. General ledger

B. General journal

C. Accounts receivable ledgers

D. Accounts payable ledgers

E. Cash disbursement book

F. All subsidiary ledgers

G. Cash receipts book

H. Supporting vouchers and invoices

I. Check register and cancelled checks

J. Purchases journal

K. Sales journal

L. Bank statements—savings and checking (domestic and foreign), single, joint or nominee

M. Investment accounts (domestic and foreign), single, joint or nominee

N. Certificates of deposits, single, joint or nominee

O. Financial reports prepared by or under the supervision of any Financial Banking Officer including, but not limited to, the Flag Banking Officer.

11. All original financial reports—weekly, monthly, quarterly and annually—internal audit reports, and management letters.

12. Copies of Forms 941E, Employment Tax Returns; copies of Forms W-4, Employees Exemption Allowance Certificate; Forms W-3 and W-2, Annual Wage and Tax Statements; and Forms 1096 and 1099, Information Reports, (Service completion awards, commissions, etc.).

13. Original agreements, contracts, and leases relating to any service or any tangible or intangible property including, but not limited to trademarks, copyrights, space (either as a lessee or lessor), employment, and equipment that the CSBI, owned or used, during 1985, 1986, and 1987. This would include licensing agreements, including Film Trust agreements, ecclesiastical management agreements, ecclesiastical management services agreements, including agreements with Church of Scientology International; ecclesiastical trust agreements; agreements or copyrights; patents; trademarks; trade names; service marks; religious marks; equipment; advices, directives, orders, policy letters and documents used by the church.

14. All documents which describe the schedule of charges for various levels of auditing and training and all records which reflect the names, addresses, social security numbers and the amounts paid by each individual who participated in the auditing and training sessions.

15. Copies of all Scientology Scriptures which set forth financial management and recordkeeping procedures.

16. All documents executed by parishioners whereby they agreed to perform services for or on behalf of the CSBI.

17. Records which show the commissions paid by or on behalf of the CSBI, including amounts paid to or on behalf of individuals, directly or indirectly, as well as documents which explain how and by whom amounts were determined and whether such amounts were reported on Forms 1099 and/or W-2.

18. Records which show the Church's financial relationship to all other entities in the Scientology hierarchy and to other Scientology churches and organizations.

19. Any agreements signed by parishioners of the CSBI, whereby they agreed not to assert legal claims against the Church and/or other individuals or entities in the Scientology hierarchy.

20. All documents relating to the furnishing of training/auditing/consulting services by other Scientology-related organizations to individuals connected with or referred by CSBI.

21. All documents relating to the furnishing of training/auditing/consulting services by CSBI to individuals connected with

or referred by other Scientology-related organizations.

22. All documents relating to payments made to or received from other Scientology-related organizations for management services, advice, guidance, penalties or fines.

23. Copies of all documents including, but not limited to Scientology Scriptures which set forth procedures by which reserve accounts were maintained by the Church of Scientology of Boston, Inc.

24. Copies of all documents including, but not limited to Scientology Scriptures which set forth how amounts of distributions from CSBI reserve accounts were determined.

25. Copies of all documents including, but not limited to, Scientology Scriptures which set forth how amounts of contributions made to CSBI reserve accounts were determined.

26. Copies of all documents including, but not limited to, Scientology Scriptures, correspondence, memorandums, books, records, journals and/or ledgers which describe the anticipated needs for which the CSBI maintained reserve accounts.

27. Copies of all documents including, but not limited to, Scientology Scriptures, correspondence, memorandums, books, records, journals and/or ledgers which set forth how and by whom the anticipated needs for which the CSBI maintained reserve accounts were determined.

28a. All Books of account, ledgers, journals and records which reflect amounts contributed to the Church of Scientology of Boston reserve accounts.

28b. All records which identify the contributor and the amount, date and purpose of each contribution made to CSBI reserve accounts.

29a. All Books of account, ledgers, journals and records which reflect amounts distributed by the CSBI reserve accounts.

29b. All records which identify the distributee, and the amount, date and purpose of each distribution made from the CSBI reserve accounts.

30. Statements of account, ledgers, journals, books and records necessary to determine the opening and closing balances in all CSBI reserve accounts during each month.

31. Bank signature cards for all CSBI reserve accounts held in banks or financial institutions.