UNITED STATES of America, Plaintiff–
Appellant/Cross–Appellee,

v.

CHURCH OF SCIENTOLOGY WEST-
ERN UNITED STATES and Cal Cole,
President, Defendants–Appellees/
Cross–Appellants.

UNITED STATES of America, Plaintiff–
Appellant/Cross–Appellee,

v.

CHURCH OF SCIENTOLOGY INTER-
NATIONAL and Lynn Farny, Secre-
tary, Defendants–Appellees/Cross–Ap-
pellants.

Nos. 91–55479, 91–55481, 91–
55489 and 91–55491.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1992.

Decided Aug. 19, 1992.

John A. Dudeck, Jr., Dept. of Justice, Washington, D.C., for plaintiff-appellant/cross-appellee.

Eric M. Lieberman, Hillary Richard, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., and Michael Lee Hertzberg, New York City, for defendants-appellees/cross-appellants.

Before TANG, SCHROEDER and BEEZER, Circuit Judges.

SCHROEDER, Circuit Judge:

## I. *Introduction*

These consolidated appeals represent the latest round in the Internal Revenue Service's legal struggle to determine the tax status and tax liability of the various entities which comprise the Church of Scientology. The struggle has a long history in the federal courts.[1] This matter arises out

---

1. *See, e.g., Hernandez v. Commissioner,* 490 U.S. 680, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989) (payments made for spiritual evaluation and training services provided by Scientology not deductible as contributions or gifts within the meaning of 26 U.S.C. § 170); *Church of Scientology of California v. IRS,* 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987) (district court properly refused church's extensive FOIA request to produce all tax returns which mention the church); *United States v. Church of Scientology of Boston, Inc.,* 933 F.2d 1074 (1st Cir.1991) (addressing issues nearly identical to those raised by this appeal); *United States v. Zolin,* 905 F.2d 1344 (9th Cir.1990) (conditional enforcement of IRS request seeking materials in the possession of Los Angeles County Superior Court for use in tax investigation affirmed on the grounds that material evidenced an intent to defraud IRS and, therefore, came within the crime-fraud exception to the attorney-client privilege), *cert. denied,* —— U.S. ——, 111 S.Ct.

1309, 113 L.Ed.2d 244 (1991); *Church of Scientology of California v. Commissioner,* 823 F.2d 1310 (9th Cir.1987) (IRS properly denied church tax deductible status under 26 U.S.C. § 501(c)(3)), *cert. denied,* 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988); *Founding Church of Scientology v. United States,* 412 F.2d 1197 (Ct.Cl.1969) (tax-exempt status of Scientology entity revoked), *cert. denied,* 397 U.S. 1009, 90 S.Ct. 1237, 25 L.Ed.2d 422 (1970); *Church of Spiritual Technology v. United States,* 26 Cl.Ct. 713 (Cl.Ct. June 29, 1992) (denying tax-exempt status to entity organized to archive collected writings of L. Ron Hubbard on grounds that it served the non-tax-exempt purposes of related Scientology entities).

The conflict has also occasionally involved other branches of the government. *See, e.g., Founding Church of Scientology of Washington, D.C., Inc. v. Webster,* 802 F.2d 1448 (D.C.Cir. 1986) (church's action against the FBI alleging an "extensive campaign of government harassment" dismissed for failure to comply with a

of parallel cases involving two separate Scientology organizations: the Church of Scientology Western United States (CSWUS) and the Church of Scientology International (CSI). The district court treated the CSWUS case as the lead case and the CSI case as related. Since most of the issues and much of the relevant background are identical, we will do likewise.

In this appeal, we are called upon to look for the first time in this circuit at the provisions of the statute enacted in 1984 setting forth the procedures the government must follow and the standards it must meet when conducting tax inquiries and examinations of churches. The Church Audit Procedures Act (CAPA), section 1033 of the Tax Reform Act of 1984, Pub.L. No. 98–369, 98 Stat. 1034, codified at 26 U.S.C. § 7611, provides that before the IRS may begin an inquiry into the tax status of any organization claiming to be a church, the Service must satisfy certain prerequisites. Among other things, it must articulate a reasonable belief in the need for an investigation and provide special notice to the church. *See* 26 U.S.C. § 7611(a)(1). Further, the statute circumscribes the scope of examinations, allowing the IRS to demand documents only "to the extent necessary" to determine tax liability or tax-exempt status. *See* 26 U.S.C. §§ 7611(b)(1)(A) & (B).

The principal legal issue in this case is the correct interpretation and application of this "to the extent necessary" restriction. Before the district court the IRS contended that, properly interpreted, this provision places no greater burden upon it in a church summons enforcement proceeding than the burden imposed in a run-of-the-mill summons enforcement under *United States v. Powell,* 379 U.S. 48, 57, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964) (IRS need only allege documents "may be relevant" to a legitimate purpose). The defendant churches argued that section 7611 imposes upon the IRS the burden of showing

actual necessity for the documents it seeks, not merely alleging relevance as required under *Powell.* As to the application of the standard in these specific cases, the churches contended that the IRS had failed with respect to each and every document category sought in the summonses to discharge this higher burden. They also argued that bad faith on the part of the IRS constituted a complete defense to the summons actions.

The district court held that there was no IRS bad faith but agreed with the churches that the statute requires more·than a mere allegation that the documents the IRS seeks to examine are relevant to an appropriate IRS inquiry. Concluding that some but not all of the document categories sought by the IRS were necessary to its inquiries, the district court ordered partial enforcement of the summonses. The IRS appealed the district court's decisions and the churches cross-appealed.

We affirm the district court in every particular. It properly held that, to give the statutory language full effect, something more than the mere allegation of relevance must be required of the IRS. This outcome accords with that reached by the only other circuit to confront the question of CAPA's proper interpretation (not coincidently in a case involving another Scientology entity). *See United States v. Church of Scientology of Boston, Inc.,* 933 F.2d 1074, 1076–79 (1st Cir.1991). We also affirm the district court's conclusion that these IRS inquiries have an appropriate purpose and are not the product of bad faith. Finally, we hold that the court properly applied the higher standard required by section 7611 when it determined that the IRS was entitled to only partial enforcement of the summonses.

## II. *Background of the CSWUS case*

A certain amount of historical detail is required to appreciate the full flavor of this

discovery order), *cert. denied,* 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987); *Church of Scientology of California v. Foley,* 640 F.2d 1335 (D.C.Cir.) (per curiam) (en banc) (statute of limitations barred case seeking civil damages against employees of the Department of Labor,

IRS and Department of State for allegedly disseminating false information in connection with the visa applications of foreign church members), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981).

litigation and the nature of the issues presented to the district court and to this court. Our principal focus is on CSWUS and throughout this opinion, the term "the Church" will refer to CSWUS. Since the material facts of the two cases addressed in this appeal are almost identical, however, this background discussion is relevant to the CSI case as well.

CSWUS was granted tax-exempt status in 1980. At the time, it was known as the Church of Scientology of San Diego and was one of several entities subordinate to the former umbrella organization of Scientology, the Church of Scientology of California. The IRS alleges that, following the 1984 decision of the Tax Court to deny tax-exempt status to the so-called "mother church," *see Church of Scientology of California v. Commissioner*, 83 T.C. 381 (1984), *aff'd*, 823 F.2d 1310 (9th Cir.1987), *cert. denied*, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988), many of the functions and operating units of that umbrella organization were moved into the Church of Scientology of San Diego, which ultimately became CSWUS. Following the 1988 denial of tax-exempt status to three other Scientology entities (including CSI), the IRS turned its attention upon CSWUS to determine whether changes in church organization had affected CSWUS's tax-exempt status.

On November 23, 1988, pursuant to the requirements of section 7611, the IRS sent CSWUS a Church Tax Inquiry Letter, seeking answers to questions of concern to the Service. The Church submitted written responses to these questions which apparently failed to allay the IRS's concerns. Consequently, the IRS sent CSWUS a Notice of Church Examination. Included in the Notice was an invitation to representatives of CSWUS to come into IRS offices for a conference in hopes that a full-fledged church tax examination might be avoided. The statute requires such an invitation. 26 U.S.C. § 7611(b)(3)(A)(iii). The Church initially requested the conference. When it learned which examining agents the IRS had assigned to the case, however, it said it would not participate in the conference unless the agents were replaced. When the IRS declined to reassign the agents, the Church refused to attend the conference.

After the date for the conference had passed, the IRS informed CSWUS that it still believed an examination was necessary and requested CSWUS to produce voluntarily certain documents for inspection. The Church notified the IRS that it would not produce any of the requested documents because the IRS had "failed to comply with the substantive and procedural requirements of 26 U.S.C. § 7611," and because CSWUS officials believed that the Church would not receive fair and objective treatment from the agents assigned to the examination.

On December 20, 1989, the IRS issued the summons which is the subject of this case, ordering the Church to produce documents in 47 categories for the years 1985 through 1987. The Church again refused and the IRS petitioned the district court to enforce the summons, submitting declarations which asserted, in conclusory fashion, that the elements required under *United States v. Powell* had been met and that the summoned documents were "relevant and necessary" to the examination of the Church and determination of whether it was entitled to tax-exempt status.

During an initial show cause hearing on the merits of the summons, the district court confronted two sets of issues. First, the court addressed Church allegations that improper prejudice and bad faith tainted the entire inquiry. Following a brief evidentiary hearing, the district court found that the process had not been infected by an improper animus. The court concluded that,

> after hearing the testimony of [the responsible IRS agent], the court finds that there is no prejudice which would affect the proper carrying out of his duties. In short, the problem of the alleged "prejudice" of the IRS agents is a molehill which has been made into a mountain.

The second issue addressed at that hearing was whether IRS declarations that the documents sought were relevant and necessary met the requirements for enforcement

of the summons. The court ruled that section 7611 imposes a higher burden upon the IRS than *Powell* alone and that the affidavits offered in support of the summons were insufficient to meet the necessity standard:

In this court's opinion, 26 U.S.C. § 7611 requires more than a showing of relevance, as was the standard under *Powell* ... and its line of cases for non-church IRS investigations.... The need for the investigation may put limits on the breadth of what could be considered "necessary", but there would still need to be shown why particular categories of documents are "necessary" to carry out a particular investigation. The IRS, apparently believing that such a showing is not a prerequisite for an order enforcing a summons, has not attempted to make such a showing here. Thus, the continuance [granted today] is to allow such a showing to be made.

In the several months the court granted the IRS to expand on the showing of necessity, the IRS prepared and submitted a supplemental declaration which addressed, category-by-category, the documents the IRS sought and the general rationale behind each request. The supplemental declaration urged the court to conclude that each category was necessary. The Church continued to maintain that "absolutely nothing" the IRS sought was necessary for the purposes of its inquiry.

After reviewing these submissions, the district court opined that, "the additional declarations and briefing has not been of great aid to the court." The IRS, the court observed, "is neither accustomed [to] nor comfortable" with the idea of showing necessity when, "in all other areas of their work, they are entitled to see anything remotely relevant." The district court found the Church's extreme position to be equally unilluminating. The district court therefore undertook its own analysis which it described as follows:

The court has examined each description of the category of documents and measured the same against the purposes of the examination [i.e., whether the

Church has a substantial nonexempt commercial purpose and whether net earnings of the church inure improperly to the benefit of individuals].... The court believes that "necessity" means that something more than relevancy must be present. While the documents must be relevant, there must be some showing that they contain the type of information which has a relation to the purposes of the examination set forth.

Applying these criteria, the court found certain categories of documents to be "necessary to the permissible scope of the examination" and therefore ordered these document categories to be produced. The court denied enforcement as to the balance of the categories.

From this order the IRS appealed, alleging that the district court erred in demanding too great a showing of "necessity," that the court misapplied the accepted burden of proof rules, and that, even under the court's own standard, the summons should have been fully enforced. The Church cross-appealed, challenging the district court's finding that the tax inquiry was being conducted for a proper purpose, alleging that it was entitled to a full evidentiary hearing on its charges of bad faith and that the summons, under the standard articulated by the district court, should have been denied in its entirety.

### III. *The IRS's Appeal in the CSWUS case*

█ The IRS's interpretation of section 7611 would require us to read out of the church audit provisions the special protections which were the obvious intent of Congress. The Code provides that a church examination may be made only

(A) in the case of church records, to the extent necessary to determine the liability for, and the amount of, any tax imposed by this title, and

(B) in the case of religious activities, to the extent necessary to determine whether an organization claiming to be a church is a church for any period.

26 U.S.C. § 7611(b)(1).

The government contends that the term "to the extent necessary" here should be

defined to mean "appropriate and helpful," or "possibly relevant" in accordance with the interpretation of the word "necessary" as used in other sections of the Internal Revenue Code. *See Commissioner v. Tellier*, 383 U.S. 687, 689, 86 S.Ct. 1118, 1119–20, 16 L.Ed.2d 185 (1966) (a "necessary" expense for purposes of § 162 is one that is "appropriate and helpful"); *Powell*, 379 U.S. at 53, 85 S.Ct. at 252–53 (requirement under § 7605 that taxpayer be notified in writing that additional audit is "necessary" imposes no duty to demonstrate "probable cause" or other similar showing). It is clear, however, that the meaning of "necessary" in this context is something more than "possibly relevant." The government's argument ignores the fact that the only purpose of section 7611(b)(1) is to articulate a restriction upon the scope of the government's inquiry. "It is our duty 'to give effect, if possible, to every clause and word of a statute,'" *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152, 2 S.Ct. 391, 394–95, 27 L.Ed. 431 (1883)). To read section 7611(b)(1) as imposing no special duty would reduce the provision to a nullity. Our observation about the intent of the statute is further bolstered by the legislative history which shows that the provisions were specially enacted to add protections for churches from possibly unfounded *or overly intrusive* tax examinations. *See* 130 Cong.Rec. S4486 (April 12, 1984) (comments of bill author Senator Grassley) (CAPA was "drafted to be certain churches are protected from unfounded examinations"). We therefore agree with the First Circuit that the IRS has failed to overcome the "formidable obstacles" which stand in the way of our accepting the Service's "counter intuitive" interpretation of the word "necessary." *Church of Scientology of Boston*, 933 F.2d at 1076–77.

■ The government also argues that the district court misplaced established burdens of proof when it determined that the IRS failed to demonstrate that certain categories of documents were not necessary to its investigation. The government's contention amounts to a restatement of its position that it fully satisfied its initial burden by merely alleging necessity of the documents and that the Church, for its part, failed to sustain the burden of proving that the documents were neither "appropriate" nor "helpful." Under *Powell*, the government's allegation that a document may be useful shifts the burden to the taxpayer to show otherwise. The IRS argues that the adoption of a stricter requirement under section 7611 will cripple its investigative abilities because, so interpreted, the statute would require the IRS "to show with swearing certainty, *before* receiving documents, that the summoned documents would significantly help the investigation." The government overdramatizes the burden. As the outcome of this case demonstrates, a court can reasonably discern that some documents are necessary to the investigation of certain ends while others are not. We conclude that Congress intended to limit the summons power in cases involving churches to those necessary documents. Thus, under section 7611, the government is required to make a greater showing in order to establish its prima facie case. Our interpretation does not change the burden scheme, it merely heightens the initial showing required of the IRS.

Finally, the government argues that, if we disagree with its principal legal contentions on the interpretation of the statute, we must nevertheless hold that the district court erred in denying enforcement of the summons with respect to certain categories of documents which, the IRS contends, would have been relevant to legitimate avenues of investigation. In order to assess the validity of the government's position that the documents sought were "necessary," we must look to the scope of that investigation. But first, we turn briefly to the appropriate standard for our review of the district court order.

■ In *Ponsford v. United States*, 771 F.2d 1305 (9th Cir.1985), this court held that the questions before the district court in the standard summons enforcement proceeding—"[w]hether there is a relationship

between the material sought and the investigation, and whether the IRS already has the material that it is seeking in its possession"—are factual inquires which we must review for clear error. *Id.* at 1308. Though the criteria by which the district court must evaluate a tax summons directed at a church are stricter than required of a standard tax summons, the nature of the district court's inquiry is the same, i.e., to determine the relationship of the information sought to the purpose of the investigation. We will therefore apply the same standard of review and decide whether the district court has committed clear error in its determination that a document or category of documents is "necessary" within the meaning of 26 U.S.C. § 7611(b)(1).

In its order partially enforcing the summons, the district court analyzed the documents sought by the IRS with reference to the aims set out by the IRS in its contacts with the Church. To initiate a church tax inquiry, the IRS is required to send a Church Tax Inquiry Letter which, among other things, must explain the concerns which give rise to the inquiry and set out its general subject matter. 26 U.S.C. § 7611(a)(3)(B)(i)(I) & (II). In his Church Tax Inquiry Letter of November 23, 1988 to CSWUS, the IRS Regional Commissioner set out the following concerns:

> 1. You are operated for a substantial nonexempt commercial purpose because your activities assist other organizations to maximize sales of goods and services associated with the practice of Scientology; and 2. You are operated for the benefit of private individuals and your net earnings inure to the benefit of private individuals.

■ As we noted in *Church of Scientology of California v. Commissioner*, 823 F.2d 1310 (9th Cir.1987), *cert. denied*, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988), churches are tax exempt under 26 U.S.C. § 501(c)(3) only if their purposes are religious (as opposed, for example, to commercial) and "no part of their net earnings inure to the benefit of private individuals.... The sole beneficiary of the church's activities must be the public at large." *Id.* at 1316. The IRS's inquiry into the Church's possible commercial purposes and whether profits inure to the benefit of individuals is, thus, plainly for a proper purpose.

■ Although the district court did not explain, category-by-category, its reasons for excluding certain categories of documents from enforcement, even a cursory review of the order reveals that the material sought by the IRS in those categories for which enforcement was denied contained documents beyond the stated scope of investigation, or documents which duplicated information which the district court had already ordered produced. The district court denied enforcement, for example, of categories which the IRS sought in order to trace the flow of funds within the Church or to discover the identity of sources of Scientology income. These were not relevant to inurement, which entails removing funds from the Church to individuals. To the extent these categories may have been relevant to discerning a commercial purpose, they duplicated information available to the IRS in other documents (such as those detailing the sale of all goods and services).

The scope of the investigation as envisioned by the district court was proper. The district court did not err when it declined to enforce the summons with respect to categories which did not fall directly and logically within this proper scope.

## IV. The Church's Cross–Appeal

The issues raised by the cross-appeal of CSWUS are similarly without merit. The Church charges that the district court erred in ruling that the IRS is conducting its examination for a legitimate purpose. The Church argues that it should have been granted discovery and was entitled to a full evidentiary hearing on IRS methods and motives. Finally, the Church also takes exception to the various categories for which the district court granted enforcement of the summons, arguing that none of the categories granted should have been enforced.

■ The district court examined each aspect of the process followed by the IRS pursuant to section 7611 and found nothing to suggest bad faith. The district court heard testimony from IRS officials, including the District Commissioner, regarding the purpose of the IRS's investigation. Properly relying on the procedure for investigating the Church's allegations of bad faith which had been upheld by the Ninth Circuit on two prior occasions, *see United States v. Author Servs., Inc.,* 804 F.2d 1520 (9th Cir.1986), *amended,* 811 F.2d 1264 (9th Cir.1987), and *United States v. Zolin,* 809 F.2d 1411, 1416 (9th Cir.1987), *aff'd in relevant part,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989), the district court reviewed the evidence and denied the Church's motion for discovery and an extended hearing. The district court found that the evidence which, according to the Church, proves the existence of a "nationwide offensive against Scientology organizations and individuals" in fact demonstrates nothing more than a nationally coordinated effort to correctly characterize the Scientology entities and verify their tax liability. The district court's findings were not clearly erroneous.

■ In addition to challenging the scope of and motive behind the entire tax inquiry, the Church also complains that the IRS did not properly fulfill the conference duty imposed by the Code because, although it offered to confer, it refused to accede to the Church's demands that it replace the agents assigned to the case. With respect to this matter, we agree with the district court's observation that:

the church could no more have a veto on who does IRS's work for it than the IRS could veto the participation of church people because it believes that such people are prejudiced against the IRS.

■ Finally, applying the standard articulated above to the district court's factual determination of necessity, we find no clear error in the decision to allow enforcement of certain document categories. In its order, the district court granted enforcement with respect to documents which could logically be expected to give the IRS an overview of the flow of money into and out of the organization. Specifically, to shed light on possible commercial purposes, the court granted access to documents detailing the range of goods and services offered by the Church, how they are priced and to whom provided. In addition, to expose possible methods of removing profit from the Church, the court granted enforcement with respect to documents that would allow the IRS to track and characterize all funds leaving the organization, whether identified as costs, charges, fees, salaries, rentals, leases or otherwise and regardless of whether the amounts were paid to another Scientology entity, to Scientology-related individuals or to someone outside of Scientology.

In conclusion, neither party argues persuasively that the district court erred in its partial enforcement of the summons in this case. In fact, the district court admirably balanced the competing concerns of disclosure to facilitate proper IRS investigations on the one hand and protection of churches in their special status under CAPA on the other.

## V. Companion Case: Church of Scientology International

In the appeals from the district court's decision in the CSI case, the positions of the parties on the issues of statutory interpretation are the same as in the CSWUS case and our resolution is the same. Factually, CSI's situation differs in that CSI is not a tax-exempt organization. The specific concerns addressed by the Regional Commissioner in his Church Tax Inquiry Letter to CSI are thus slightly different:

The [IRS's] information supports a reasonable belief that: 1. You are operated for a substantial commercial purpose because your activities assist other organizations to maximize sale of goods and services associated with the practice of Scientology; and 2. Your earnings from these activities may not be fully reported.

Based on these concerns, the district court granted enforcement of the summons only for documents likely to reveal relevant

information unavailable from other sources. The district court required CSI to produce documents broadly aimed at characterizing "all funds received" to allow the IRS to verify CSI's earnings, but denied documents calculated to reveal how CSI distributes its profits. Such documents are irrelevant since inurement is not an issue for a non-tax-exempt organization. As with the CSWUS summons, the district court was particularly careful to deny highly intrusive requests for sensitive internal documents when less sensitive documents could provide the same information. As with the CSWUS summons, we see no error in the district court's enforcement of the CSI summons.

## VI. *Conclusion*

We reject the contentions of the appellants and the cross-appellants in both of the cases under consideration here. The disposition of the district court in each is AFFIRMED.