UNITED STATES of America and Anthony Carsanaro, Revenue Agent, Internal Revenue Service, Petitioners-Appellees,

v.

The FREEDOM CHURCH and Reverend Richard M. Doncaster, Respondents-Appellants.

No. 79–1281.

United States Court of Appeals, First Circuit.

Argued Oct. 5, 1979.

Decided Dec. 28, 1979.

Arthur H. Goldsmith, Boston, Mass., with whom Snyder & Weinstein, Boston, Mass., was on brief, for appellants.

Joseph S. Ackerstein, Sp. Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., and Charles E. Brookhart, Atty., Tax Div., Dept. of Justice, Washington, D. C., were on brief, for appellees.

Before CAMPBELL and BOWNES, Circuit Judges, and BONSAL,* Senior District Judge.

BOWNES, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Massachusetts enforcing an administrative summons issued by the Internal Revenue Service (IRS) to appellant Reverend Richard M. Doncaster, pursuant to an investigation of the tax liability of appellant The Freedom Church, of which Reverend Doncaster is pastor. The action was filed pursuant to 26 U.S.C. §§ 7402(b) [1] and 7604(a).[2] Jurisdiction on appeal is based on 28 U.S.C. § 1291. *See Reisman v. Caplin,* 375 U.S. 440, 445–46, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964).

There are three issues before us: the scope of the summons; whether it was error for the district court to infer that the records sought existed and Reverend Doncaster had possession of them; and whether there is a valid statutory basis for the summons.

The Freedom Church, located at 41 Aunt Dorah's Lane, Yarmouthport, Massachu-

---

* Of the Southern District of New York, sitting by designation.

**1.** 26 U.S.C. § 7402(b) provides that the district court shall have jurisdiction

 (b) *To enforce summons.*—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

**2.** 26 U.S.C. § 7604(a) provides:

 If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

setts, had tax exempt status under 26 U.S.C. § 501(c)(3). As a church, it never had to apply for such status, 26 U.S.C. § 508(c), and received an automatic exemption from filing an annual tax return under 26 U.S.C. § 6033(a)(2)(A).

During the course of the IRS' investigation to determine the church's tax exempt status, a summons was issued under the authority of 26 U.S.C. § 7602[3] directing Reverend Doncaster to appear before Revenue Agent Anthony Carsanaro and to produce for examination a detailed and extensive list of materials.[4] The purpose of the summons was to obtain evidence relating to the tax liability, if any, of The Freedom Church for the period of January 1, 1976, to "present date." Although Reverend Doncaster appeared at the IRS office in Hyannis, Massachusetts, on the date requested, he refused to answer any questions or produce any of the requested documents. The government and Agent Carsanaro then brought a petition in the district court for enforcement of its summons and an Order to Show Cause to be issued to Reverend Doncaster.

At the show cause hearing before the United States Magistrate, Reverend Doncaster, appearing *pro se*, refused to answer any questions beyond his name, address, and occupation. His address was the same as the church and he acknowledged that he was the pastor of The Freedom Church. He stated that his refusals were grounded on the first, fourth, fifth, ninth, thirteenth, and fourteenth amendments to the Constitution. The magistrate ordered enforcement of the summons[5] and a hearing on this order was subsequently held before the United States District Judge. At that time,

3. 26 U.S.C. § 7602 provides:

> For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—
>
> (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
>
> (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
>
> (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

4. All books, records, and papers of The Freedom Church including but not limited to Organizational documents and by-laws; books of accounts, bank records, bank statements, including cancelled checks, and records of receipts and disbursements with information indicating the source and nature of such receipts and purposes for the disbursements. All correspondence files, data and lists of substantial contributors to the church and records relating to any and all assets owned or used by the Freedom Church and the manner in which such assets were acquired. Records regarding the nature and specific extent of all religious activities conducted by the Church to include but not limited to a list of all members of the congregation and members of the Sacerdotal Order of the Freedom Church and the manner by which such members are selected. Records to indicate which members, if any, have taken a vow of poverty with records of all, if any, of the assets or income turned over or to be turned over to the Church. All records and information on the specific activities conducted by such members to the extent that such activities are attributed to the religious purpose or creed of the church. Correspondence files which will explain the relationship, if any, between the Freedom Church, The Council of Free Churches, Life Science Church and Bishop William E. Drexer, D.D. All records and information concerning any contracts and agreements entered into by the church with its Pastor, Reverend Doncaster. Documents and records related to the background of your ministers and trustees to include a precis of curriculum completed by the ordained ministers who are members of the church and the circumstances pertaining to their ordination.

The government subsequently moved to amend the petition to omit from the summoned material the organizational documents and by-laws, and the motion was granted.

5. There were actually three hearings before the magistrate, on March 7, 21, and 28. At each hearing, Doncaster, who represented himself, was advised to retain an attorney.

Reverend Doncaster and The Freedom Church were represented by counsel. Counsel primarily argued that the magistrate's inference that Reverend Doncaster possessed the summoned documents was incorrect, claiming that the Reverend had met his burden of proving nonpossession. Appellants also contended that 26 U.S.C. § 7605(c)[6] prohibits the examination of a church's books of accounts for the purpose of determining tax exempt status, and raised a general objection that the summons was substantially overbroad. The district court overruled the objections and orally approved the magistrate's report.[7]

Before discussing the specific issues raised on appeal, we review the law governing enforcement of a summons issued pursuant to 26 U.S.C. § 7602. The Supreme Court has recently held that, in order to enforce an IRS summons in district court, the summons must issue prior to a recommendation by the IRS for criminal prosecution relative to the subject matter of the summons and the IRS must use its summons authority in good faith pursuit of the purposes of 26 U.S.C. § 7602. *United States v. LaSalle National Bank*, 437 U.S. 298, 318, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). The good faith of the IRS in issuing a summons is tested by four criteria set out in *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964): the IRS must show (1) that the investigation will be conducted pursuant to a legitimate purpose; (2) that the inquiry may be relevant to the purpose; (3) that the information sought is not already in the possession of the IRS; and (4) that the administrative steps required by the Internal Revenue Code have been followed. At the enforcement proceeding, the summonee is entitled to "'challenge the summons on any appropriate ground,' *Reisman v. Caplin*, 375 U.S. 440, at 449 [84 S.Ct. 508, at 513] (1964)." *Powell* at 58, 85 S.Ct. at 255. The burden of proving an abuse of the court's process or the absence of one of the *Powell* elements of good faith is on the summonee. *United States v. LaSalle National Bank*, 437 U.S. at 316, 98 S.Ct. 2357; *United States v. Powell*, 379 U.S. at 58, 85 S.Ct. 248; *United States v. Church of Scientology of California*, 520 F.2d 818, 824 (9th Cir. 1975). And, as we said in *United States v. Salter*, 432 F.2d 697, 700 (1st Cir. 1970), "Some *evidence* supporting respondent's allegations should be introduced" (emphasis in original).

## I.

The first challenge to the summons involves its scope. Appellants object to the volume and type of material requested as an infringement on the free exercise of religion and freedom of association of Reverend Doncaster and his congregants. Additionally, it is claimed that the second *Powell* element is not met, in that certain items, particularly membership and contributors lists, are not relevant to an investigation of tax exempt status. At the hearing before the district court judge, counsel for appellants made a "general objection" to the summons' being "substantially overbroad." The quoted words constitute appellants' entire argument below on the issues

---

**6.** 26 U.S.C. § 7605(c) provides:

(c) *Restriction on examination of churches.*—No examination of the books of account of a church or convention or association of churches shall be made to determine whether such organization may be engaged in the carrying on of an unrelated trade or business or may be otherwise engaged in activities which may be subject to tax under part III of subchapter F of chapter 1 of this title (sec. 511 and following, relating to taxation of business income of exempt organizations) unless the Secretary (such officer being no lower than a principal internal revenue officer for an internal revenue region)

believes that such organization may be so engaged and so notifies the organization in advance of the examination. No examination of the religious activities of such an organization shall be made except to the extent necessary to determine whether such organization is a church or a convention or association of churches, and no examination of the books of account of such an organization shall be made other than to the extent necessary to determine the amount of tax imposed by this title.

**7.** A written final judgment by the district court was waived.

of first amendment privilege and relevancy. The magistrate gave Reverend Doncaster the opportunity to rebut the IRS' showing, and he did not use it. When the hearing before the magistrate was reconvened after a two-week continuance, Reverend Doncaster persisted in his refusal to answer questions, declining even to allege IRS bad faith, much less produce any evidence. "To ascertain whether there is any basis for questioning the summons, the traditional show cause order is an effective and appropriate procedural tool." *United States v. Newman,* 441 F.2d 165, 169 (5th Cir. 1971). Appellants chose not to avail themselves of the magistrate's forum for offering proof. And, even at the hearing before the district court, appellants' counsel engaged only in oral argument, choosing to raise legal objections to the magistrate's rulings rather than in any way attempting to meet the summonee's burden of producing facts to show an abuse of process or lack of good faith by the IRS.

 Appellants also claim that the broad request for documents by the government constitutes an impermissible entanglement of church and state. They rely on *Walz v. Tax Commissioner,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970); *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971); *Tilton v. Richardson,* 403 U.S. 672, 91 S.Ct. 2091, 29 L.Ed.2d 790 (1971); and *Surinach v. Pesquera DeBusquets,* 604 F.2d 73 (1st Cir. 1979). Where unconstitutional entanglement has been found, it has been in the government's continuing monitoring or potential for regulating the religious activities under scrutiny. *See Surinach v. Pesquera DeBusquets, supra.* In the present case, the IRS does not seek to regulate or in any way become involved in the religious activities or control the financial matters of the church. It merely seeks to make a determination, based on all available and pertinent data, of the church's tax exempt status. As the Supreme Court has held, in determining whether there is excessive entanglement, the question is "whether particular acts in question are intended to establish or interfere with religious beliefs and practices or

have the effect of doing so." *Walz v. Tax Commissioner,* 397 U.S. at 669, 90 S.Ct. at 1412. There is nothing in the record below to indicate that the Internal Revenue Service had such an impermissible intention or the summons would have such an effect were appellants to comply with it. Enforcement of the summons, therefore, does not violate the religion clauses of the first amendment.

Appellants' other first amendment claim is that the IRS request for membership and contributors lists violates the right of the congregants to freedom of association. *See Bates v. City of Little Rock,* 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). In *Bates,* the Supreme Court found that a city ordinance requiring that the local branch of the NAACP disclose its membership impinged on the members' freedom of association, where known members were subjected to threats and harassment and where there was evidence that fear of reprisal from disclosure had induced members to withdraw and prospective members to decide against joining. *Bates v. City of Little Rock,* 361 U.S. at 523–24, 80 S.Ct. 412. The Tax Court recently held in a case similar to the one at bar:

> It seems clear that, particularly where the Government shows a need for the information, that the party asserting the constitutional privilege must show that disclosure of the information will be prejudicial to those asserting the privilege, such as exposure to public hostility, or deterrence of free association, or denial of anonymity where there is reason therefor.

*Bronner v. Commissioner* 72 T.C. 368, 371 (1979) (citations and footnote omitted). At neither the hearing before the magistrate, nor the one before the district court, did appellants make any showing of actual or potential prejudice to their rights of associational freedoms. Since we decline to adopt a *per se* rule regarding Internal Revenue Service requests for church membership lists, we find that appellants' constitutional challenge to the summons must fall.

■ Appellants' assertion that the requested materials do not meet the *Powell* relevancy requirement is similarly unsupported by the record. For enforcement of a section 7602 summons, the test of relevancy that the IRS must meet is whether the inspection sought "'might have thrown light upon' the correctness of the taxpayer's returns." *United States v. Noall*, 587 F.2d 123, 125 (2d Cir. 1978), *cert. denied*, 441 U.S. 923, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979), citing *Foster v. United States*, 265 F.2d 183, 187 (2d Cir.), *cert. denied*, 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261 (1958). *See also United States v. Davey*, 543 F.2d 996, 999 (2d Cir. 1976). While the broad investigative authority given to the IRS under section 7602 is generally acknowledged, *see United States v. Powell, supra*; *United States v. Coopers & Lybrand*, 550 F.2d 615, 619 (10th Cir. 1977), even to the extent that the IRS is "licensed to fish," *United States v. Giordano*, 419 F.2d 564, 568 (8th Cir. 1969), *cert. denied*, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970), the standard for relevancy may be a bit higher where the summons is directed at a third-party custodian of the records. *See United States v. Coopers & Lybrand, supra*; *United States v. Dauphin Deposit Trust Company*, 385 F.2d 129 (3d Cir. 1967), *cert. denied*, 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 981 (1968); *United States v. Harrington*, 388 F.2d 520 (2d Cir. 1968). Here, however, we are faced with a summons directed at the entity under investigation and the Internal Revenue Service's showing of relevancy need only be minimal. *United States v. Noall*, 587 F.2d at 126. The showing may be made on the face of the summons and by supporting affidavits. *United States v. Marine Midland Bank of New York*, 585 F.2d 36 (2d Cir. 1978).[8]

■■ Once the government has made its minimal showing of the relevancy of the information sought, the burden shifts to the summonee to challenge the summons on that or any other ground. *United States v. Powell*, 379 U.S. at 58, 85 S.Ct. 248; *United States v. McCarthy*, 514 F.2d 368, 373 (3d Cir. 1975); *United States v. Newman*, 441 F.2d at 169–70; *United States v. Salter*, 432 F.2d at 700. Although the taxpayer is entitled to a hearing prior to enforcement of a summons against him in order to prevent abuse of the court's process, *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112; *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459, the enforcement hearing is a summary proceeding, *Donaldson v. United States*, 400 U.S. 517, 529, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970), and "if the person summoned neither puts in issue allegations of the complaint nor raises proper affirmative defenses, no evidentiary hearing will be required; the matter can be decided on the pleadings." *United States v. McCarthy*, 514 F.2d at 373. *See United States v. Salter*, 432 F.2d 697. The pleadings in this case consist of the petition for enforcement and the accompanying affidavits of the two revenue agents investigating The Freedom Church. The petition alleges that the requested records relate to the question of the church's tax exempt status with affidavits by two agents that production of the material is essential to the investigation.

Although appellants claim generally that the information sought is not relevant to the government's investigation, their argument concentrates on the list of members and contributors. We, therefore, focus our inquiry on these items. We agree with the observation in *Bronner v. Tax Commissioner*, 72 T.C. 368, that where the status of a church as a tax exempt organization is at issue, "[w]hether there are members in addition to petitioner and his family and, if so, the extent of their relationship with [the church], will probably be material and relevant to that issue. . . ." *Id.* at 371. Information regarding contributors to the

---

8. Indeed, the Fifth Circuit has held that the government need not make this preliminary showing until the summoned party has raised in a substantial way the existence of substantial deficiencies in the summons proceedings and only when so raised is there any need for an evidentiary hearing. *United States v. Newman*, 441 F.2d 165, 169 (5th Cir. 1971) (footnote omitted).

church appears also to be relevant to the issue of its status as a church. At least, we cannot say that the information is irrelevant on its face.

In any event, the show cause hearing before the magistrate was the proper forum for Reverend Doncaster to raise the issue of relevancy and rebut the allegations of the government. Since he produced no evidence at that time nor at the subsequent hearing before the district court judge, we are once again left with a barren record and an unmet burden of proof. We cannot, as appellants request, narrow the scope of the summons on appeal without at least some indication that the court below abused its discretion by failure to do so. We find no abuse of discretion in the district court's clearly implied finding that the summoned material was relevant.

## II.

The next issue is whether it was permissible for the district court to infer on the basis of the record before it that the summoned records existed and that Reverend Doncaster had possession of them. Appellants argue that, since section 508(c) exempts churches from initially applying for tax exempt status and section 6033(a)(2)(A)(i) exempts them from filing annual returns with the IRS, no inference can be drawn that any records of the type sought exist at all and the IRS must prove by positive evidence the existence of the records and their possession by the summonee. We find no authority to support this position.[9]

The only one of the *Powell* elements of good faith having to do with possession of documents requires that the IRS not already be in possession of the information it seeks. *United States v. Powell*, 379 U.S. at 57–58, 85 S.Ct. 248. The IRS alleged in its petition that it was not in possession of the information it sought from Reverend Doncaster. This circuit has held that once the district court has reason to believe that the requested documents exist, the burden then shifts to the summonee to show that he is not in possession of them. *Angiulo v. Mullins*, 338 F.2d 820, 822 (1st Cir. 1954).

■ We think that the government made a sufficient showing for the district court to reasonably believe that the records sought existed and that Reverend Doncaster had actual or constructive possession of them. The petition of IRS alleges that The Freedom Church is located at 41 Aunt Dorah's Lane, Yarmouthport, Massachusetts. In his limited testimony before the magistrate, Reverend Doncaster also gave that address as his place of residence. In his affidavit, Agent Carsanaro alleged that, during his investigation of the tax exempt status of The Freedom Church, he learned that Reverend Doncaster was the pastor of the church and that he had reason to believe that Doncaster "is in possession of certain books, records and papers of The Freedom Church which relate to its status as a tax exempt organization." Reverend Doncaster offered no contrary evidence at any of the hearings. At the hearing in the district court, counsel for appellants repeatedly stressed that Reverend Doncaster testified that he was not in possession of the records. This is not entirely accurate. The record shows that there was no sworn testimony by Reverend Doncaster that he was not in possession of the records.[10] When under oath, he refused on allegedly constitutional

---

**9.** Appellants cite *United States v. Pollock*, 201 F.Supp. 542 (W.D.Ark.1962), an inapposite case involving criminal contempt proceedings, where the government was held to the burden of proving beyond a reasonable doubt all the elements of its case, including proof that the records sought existed.

**10.** At the hearing on March 7, at which there was no testimony the following colloquy took place between the magistrate and Reverend Doncaster:

THE COURT: Well, that raises a factual matter as opposed to a legal matter, whether or not you have the records. I don't know, that's something that a hearing would take care of.

THE WITNESS: At the time he asked me I said I did not have them, Your Honor.

THE COURT: That is not the question now. The question is do you have them now?

THE WITNESS: No, Your Honor, I do not.

grounds to answer questions directed as to who had possession of the records.

The government stated at the hearing on March 7 that Reverend Doncaster had filed the church's organizational papers with the Secretary of State. At the hearing on March 21, Reverend Doncaster refused to answer any questions as to whether there were records and whether he had them. The government pointed out to the district court that the church's application for tax exemption was signed by Reverend Doncaster as principal officer of The Freedom Church and that the church's articles of incorporation state that the pastor shall be the administrator of the property and income of the church. This was sufficient for a finding that the records sought existed and that Reverend Doncaster had either actual or constructive possession of them. To rule otherwise would be to ignore reality and hamstring the IRS investigation by letting the person being investigated flout the summons without rhyme or reason.

Appellants' reliance on our decision in *United States v. Salter*, 432 F.2d 697 is misplaced. In that case, the issue was whether or not the summoned party was entitled to discovery prior to the enforcement proceeding, and we held that the summonee must first introduce "some *evidence*" supporting his allegation of improper IRS purpose. *Id.* at 700 (emphasis in original). At the minimum, the summonee must at least allege the unenforceability of the summons due to IRS bad faith and indicate his interest in offering proof. The procedure we approved is the following:

> "The general solution would probably be for the district court to proceed directly to a hearing at which, *if desired*, the summonee could examine the agent who issued the summons, concerning his purpose. The court could then, by observation and, where necessary, its own questioning of the agent, make its own determination of whether exploration, as by discovery, seemed to be in order."

*United States v. Salter*, 432 F.2d at 700 (emphasis added).[11]

What is contemplated in *Salter* and in the cases cited *supra* at note 11 is a threshold challenge to the summons by the summoned party, who thereby evinces an interest in taking advantage of the adversary proceeding to which he is entitled prior to enforcement of an IRS summons. *See Donaldson v. United States*, 400 U.S. at 525, 91 S.Ct. 534; *United States v. Church of Scientology of California*, 520 F.2d at 820–21. In the present case, Reverend Doncaster was given ample opportunity by the magistrate to present evidence which he did not do. Even at the subsequent hearing before the district court, appellants' counsel presented only a legal argument claiming error by the magistrate in inferring Doncaster's possession of the records. Appellants presented no evidence, did not ask permission to question the agent or dispute the statements of the government as to Reverend Doncaster's signing the application for tax exemption and the provisions of the church's articles of incorporation. The threshold requirements of *Salter* were not met.

### III.

We find appellants' statutory argument wholly without merit.

Appellants' first claim is that a section 7602 summons may not be used for determining the tax exempt status of a religious organization. They argue that, since such a determination is not expressly authorized by the statute, a summons cannot issue for that purpose. Among the express purposes of section 7602 is "determining the liability of any person for any internal revenue tax." Surely, a determination of the tax liability of a religious organization must start with an inquiry as to whether it is a tax exempt entity. The summons authorized by section 7602 is a necessary adjunct to

---

11. This procedure has been followed or cited with approval in other circuits. *See United States v. McCarthy*, 514 F.2d 368, 373 n.6 (3d Cir. 1975); *United States v. Church of Scientology of California*, 520 F.2d 818, 824–25 (9th Cir. 1975); *United States v. Morgan Guaranty Trust Co.*, 572 F.2d 36, 42–43 n.9 (2d Cir. 1978), *cert. denied*, 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1979).

the broad investigative powers of the IRS pursuant to section 7601 of the Code.[12] *See United States v. Powell*, 379 U.S. at 56, 85 S.Ct. 248.

Moreover, we are of the opinion that section 7605 and its implementing regulations, when read together with section 7602, support the interpretation that section 7602 contemplates an inquiry into a church's tax exempt status. Section 7602 permits an examination of books and records for the purpose of, inter alia, determining a person's tax liability. Section 7605, whose subsection (c), *supra*, n.6, specifically puts restrictions on the examination of churches, is designed to limit the time and place of examinations of books and records conducted pursuant to section 7602. It is a limitation on, but not the proscription of, the use of a section 7602 summons.

Both the words of the statute and its legislative history contradict appellants' second claim that section 7605(c) prohibits an IRS examination of "books of account" to determine the tax exempt status of an organization that claims to be a church. The legislative history of section 7605(c) indicates that Congress did not intend to inhibit the IRS from investigating the tax exempt status of a church. "New subsection (c) [of § 7605] does not preclude an agent, for example, from examining an organization to determine if it is, in fact, a church." H.R.No.91–413, 91st Cong., 1st Sess., *reprinted in* [1969] U.S.Code Cong. & Admin.News, pp. 1645, 1910. This congressional intent has been embodied in the Internal Revenue Code regulations. 26 C.F.R. § 301.7605–1(c)(2) provides in pertinent part, "No examination of the books of account of an organization which claims to be a church . . . shall be made . . except to the extent necessary (i) to determine the initial or continuing qualification of the organization under section 501(c)(3)." This clearly gives the IRS the right to ex-

amine books of accounts in determining the tax exempt status of a claimed church.

*Affirmed.*

---

**12.** *§ 7601. Canvass of districts for taxable persons and objects*

(a) *General rule.*—The Secretary shall, to the extent he deems it practicable, cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax, and all persons owning or having the care and management of any objects with respect to which any tax is imposed.