September 27, 1995
UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT



No. 95-1277

UNITED STATES OF AMERICA,
Petitioner, Appellant,

v.

NANCY GERTNER, ETC., ET AL.,
Respondents, Appellees.



JOHN DOE,
Intervenor, Appellee.



ERRATA SHEET ERRATA SHEET

The opinion of this court issued on September 13, 1995, is
corrected as follows:

On page 18, note 7, line 3 change "he" to "the"

UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT


No. 95-1277

UNITED STATES OF AMERICA,
Petitioner, Appellant,

v.

NANCY GERTNER, ETC., ET AL.,
Respondents, Appellees.


JOHN DOE,
Intervenor, Appellee.


APPEAL FROM THE UNITED STATES DISTRICT COURT 
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morton A. Brody,* U. S. District Judge] 


Before

Selya and Boudin, Circuit Judges, 

and Lisi,** District Judge. 


John A. Dudeck, Jr., Attorney, Tax Division, U.S. Dep't of 
Justice, with whom Loretta C. Argrett, Assistant Attorney 
General, Gary R. Allen and Charles E. Brookhart, Attorneys, Tax 
Division, were on brief, for appellant.
Gerald B. Lefcourt, with whom Sheryl E. Reich, Lefcourt & 
Dratel, P.C., Bruce Maffeo, Bernstein & Maffeo, Thomas E. Dwyer, 
Jr., Jody L. Newman, and Dwyer & Collora were on joint brief, for 
appellees.
Judith H. Mizner, Andrew Good, Benjamin Fierro, III, and 
Francis S. Moran, Jr. on joint brief for Massachusetts Ass'n of 
Criminal Defense Lawyers, Massachusetts Bar Ass'n, and Boston Bar
Ass'n, amici curiae.


September 13, 1995



*Of the District of Maine, sitting by designation.
**Of the District of Rhode Island, sitting by designation.

SELYA, Circuit Judge. This controversy features an SELYA, Circuit Judge. 

old-fashioned tug of war. Pulling in one direction is the

Internal Revenue Service (IRS) which, for easily understandable

reasons, is intent on learning the identity of persons who pay

large legal fees in cash. Pulling in the opposite direction is a

consortium consisting of two lawyers and three bar associations

(appearing as amici curiae) which, for equally understandable

reasons (fearing inter alia that disclosure may spur 

prosecution), is intent on safeguarding the identity of clients

who pay in cash. In this case, the parties' positions hardened

and a stalemate developed. The district court resolved matters

in the lawyers' favor, refusing to enforce IRS summonses designed

to obtain "client identity" information pursuant to section 6050I

of the Internal Revenue Code (I.R.C.), 26 U.S.C. 6050I (1988 &

Supp. V 1993). See United States v. Gertner, 873 F. Supp. 729 

(D. Mass. 1995). The government appeals. We affirm (albeit on

more circumscribed grounds than those enumerated by the lower

court).

I. BACKGROUND I. BACKGROUND

Federal law, specifically I.R.C. 6050I and its

implementing regulations, requires a person who receives more

than $10,000 in cash during a single trade or business

transaction to file a form (IRS Form 8300) reporting the name,

address, occupation, and social security number of the payor,

along with the date and nature of the transaction and the amount

involved. See I.R.C. 6050I; 26 C.F.R. 1.6050I-1(e) (1995). 

3

At various times in 1991 and 1992, respondents Nancy Gertner and

Jody Newman, then partners in a Boston law firm, filed forms

reflecting four successive payments of hefty cash fees to the

firm by a single client. Each of the forms was essentially

complete except for the name of the client. The respondents

advised the IRS that they were withholding the client's identity

on the basis of ethical obligations, attorney-client privilege,

and specified constitutional protections.

These filings sparked a lengthy course of

correspondence between the law firm and the IRS. In that

exchange, members of the firm attempted on at least three

occasions to determine whether the IRS wanted the omitted

information as part of an investigation focused on the firm or to

learn more about the unnamed client. The IRS did not deign to

answer these inquiries.

The parties remained deadlocked and the IRS issued

summonses purporting to direct the respondents to furnish certain

records and testimony anent the client's identity. The

respondents declined to comply. The government then brought an

enforcement action pursuant to I.R.C. 7402(a) & 7604(a),

claiming that it wanted the information in connection with an

investigation of the law firm's tax liability. On April 20,

1994, after perusing the complaint and the declaration of Revenue

Agent Sophia Ameno, the district court issued an order directing

the respondents to show cause why they should not be compelled to

honor the summonses.

4

The court permitted the client to intervene

pseudonymously. Thereafter, the respondents and the intervenor

mounted two lines of defense. First, they asseverated that the

IRS's alleged investigation of the lawyers was merely a pretext

disguising its real objective learning more about the client 

and that the government therefore should be required to follow

the statutory procedure for issuing summonses affecting

unidentified third parties.1 See I.R.C. 7609(f). Second, in 

concert with the amici they insisted that various privileges and

protections allow lawyers to shield their client's identity from

the reach of such summonses. The IRS joined issue, asserting

that it had employed the appropriate procedure; that the

respondents had failed to show either that the supposed

investigation of the law firm was a sham or that an improper

motive tainted the summonses; and, finally, that no special

protection of any kind attached to the desired information.

When the day of decision dawned, the respondents asked

the district court to take live testimony. The government

opposed the request. The court eschewed the evidentiary hearing

that the respondents sought but nevertheless refused to enforce
 

1Such a summons is known colloquially as a "John Doe"
summons. The IRS cannot issue a John Doe summons defined by
statute as a summons "which does not identify the person with
respect to whose liability the summons is issued" without first
securing court approval. I.R.C. 7609(f). The reason for
requiring such approval is obvious: in the John Doe context, the
court in effect "takes the place of the affected taxpayer" who,
being unnamed, cannot herself be expected to know about let
alone to oppose the summons even if it is irregular. Tiffany 
Fine Arts, Inc. v. United States, 469 U.S. 310, 321 (1985). We 
discuss the mechanics of the preapproval process infra. 

5

the summonses. It found as a fact that the IRS's purported probe

of the law firm's tax-related affairs was a hoax, and that the

IRS should have complied with I.R.C. 7609(f) prior to serving

the summonses. See Gertner, 873 F. Supp. at 734. Nor did the 

court stop there; it proceeded to hold that, under the

circumstances here obtaining, the attorney-client privilege

thwarted the IRS's demand for information concerning client

identity. See id. at 734-37. This appeal ensued. 

II. ANALYSIS II. ANALYSIS

We split our analysis into three segments. First, we

limn the framework for determining whether the federal

judiciary's imprimatur should be impressed upon an IRS summons.

Next, we mull the district court's finding on the pretext issue

under the deferential standard of review that pertains in this

context. Lastly, we explain why the IRS's failure to comply with

I.R.C. 7609(f) effectively ended the case.

A. The Framework. A. The Framework. 

The IRS has broad authority to issue summonses under

I.R.C. 7602 & 7604. Enforcement proceedings are designed to

be summary, see Donaldson v. United States, 400 U.S. 517, 529 

(1971); United States v. Freedom Church, 613 F.2d 316, 321 (1st 

Cir. 1979), and the court's role is simply to ensure that the IRS

is using its broad authority in good faith and in compliance with

the law. See Donaldson, 400 U.S. at 536; United States v. Kis, 

658 F.2d 526, 535 (7th Cir. 1981), cert. denied, 455 U.S. 1018 

(1982). Thus, when a challenge to a summons is lodged, the IRS

6

must only satisfy the court that (1) its investigation is being

conducted pursuant to a proper purpose, (2) the information

sought in the summons is (or may be) relevant to that purpose,

(3) the information is not already within the IRS's possession,

and (4) all legally required administrative steps have been

followed. See United States v. Powell, 379 U.S. 48, 57-58 

(1964); Copp v. United States, 968 F.2d 1435, 1437 (1st Cir. 

1992), cert. denied, 113 S. Ct. 1257 (1993). 

In determining whether to enforce IRS summonses under

these substantive standards, we do not write on a pristine page.

This court has constructed a three-tiered framework for

expediting such determinations. See Freedom Church, 613 F.2d at 

321; United States v. Salter, 432 F.2d 697, 700 (1st Cir. 1970); 

accord United States v. Church of Scientology, 520 F.2d 818, 824 

(9th Cir. 1975); United States v. McCarthy, 514 F.2d 368, 372-73 

(3d Cir. 1975). To mount the first tier, the IRS must make a

prima facie showing that it is acting in good faith and for a

lawful purpose. This burden is not taxing, so to speak. Courts

repeatedly have confirmed that an affidavit of the investigating

agent attesting to satisfaction of the four Powell elements is 

itself adequate to make the requisite prima facie showing. See, 

e.g., Sylvestre v. United States, 978 F.2d 25, 26 (1st Cir. 1992) 

(per curiam), cert. denied, 113 S. Ct. 1606 (1993); United States 

v. Lawn Builders of New Eng., Inc., 856 F.2d 388, 392 (1st Cir. 

1988); Liberty Fin. Servs. v. United States, 778 F.2d 1390, 1392 

(9th Cir. 1985); Kis, 658 F.2d at 536. 

7

Once this minimal showing surfaces, the burden shifts

to the taxpayer to rebut the good-faith presumption that arises

in consequence of the government's prima facie case.2 The

taxpayer is not at this stage required to disprove the 

government's profession of good faith. See United States v. 

Samuels, Kramer & Co., 712 F.2d 1342, 1348 (9th Cir. 1983); Kis, 

658 F.2d at 540. She must, however, shoulder a significant

burden of production: in order to advance past the first tier,

the taxpayer must articulate specific allegations of bad faith

and, if necessary, produce reasonably particularized evidence in

support of those allegations.3 See Kis, 658 F.2d at 540; United 

States v. Garden State Nat'l Bank, 607 F.2d 61, 71 (3d Cir. 

1979); Salter, 432 F.2d at 700. This showing does not demand 

that the taxpayer conclusively give the lie to the prima facie

case, but only that she create a "substantial question in the

court's mind regarding the validity of the government's purpose."

Salter, 432 F.2d at 700; accord Church of Scientology, 520 F.2d 

 

2The summons enforcement framework is reminiscent of the
"proof structure" for proving intentional discrimination under
Title VII. See Texas Dep't of Community Affairs v. Burdine, 450 
U.S. 248, 252-55 (1981); McDonnell Douglas Corp. v. Green, 411 
U.S. 792, 802-05 (1973).

3Although some cases refer to the taxpayer's "burden of
proof" at this stage, see, e.g., United States v. Balanced Fin. 
Mgmt., Inc., 769 F.2d 1440, 1444 (10th Cir. 1985); Salter, 432 
F.2d at 700, those cases are not necessarily at odds with our
description of the framework's second tier. The term "burden of
proof" may refer to either a burden or production or a burden of
persuasion. See Kenneth S. Broun et al., McCormick on Evidence  
336 (4th ed. 1992). Only the burden of production is at issue
when the taxpayer attempts to rebut the IRS's prima facie showing
and thereby justify further inquiry.

8

at 824; McCarthy, 514 F.2d at 376. To reach this goal, it is not 

absolutely essential that the taxpayer adduce additional or

independent evidence; she may hoist her burden either by citing

new facts or by bringing to light mortal weaknesses in the

government's proffer. 

If the taxpayer satisfies this burden of production,

the third tier beckons. At this stage, the district court weighs

the facts, draws inferences, and decides the issue. To do so,

the court frequently will proceed to an evidentiary hearing,

taking testimony and exhibits from both sides. See Samuels, 

Kramer, 712 F.2d at 1347-48; Salter, 432 F.2d at 700. But there 

is no hard-and-fast rule compelling an evidentiary hearing. A

district court may, in appropriate circumstances, forgo such a

hearing and decide the issues on the existing record. See Copp, 

968 F.2d at 1438 n.1; McCarthy, 514 F.2d at 373. 

A question lingers at the third tier as to the

continuing viability of the original presumption in favor of the

IRS. The case law seems to suggest that the presumption endures

and serves at this stage to saddle the taxpayer with the burden

of persuading the judge, qua factfinder, that at least one of the 

Powell elements is missing. See, e.g., Kis, 658 F.2d at 540 

(stating that a taxpayer "can succeed only by showing by a

preponderance of the evidence some improper use of the summons by

the IRS"); Freedom Church, 613 F.2d at 319 ("The burden of 

proving an abuse of the court's process or the absence of one of

the Powell elements of good faith is on the summonee."); see also 

9

United States v. Balanced Fin. Mgmt., Inc., 769 F.2d 1440, 1445 

(10th Cir. 1985). We are somewhat skeptical of this approach,

especially given the Supreme Court's recent lesson on

presumptions and burdens of proof in an analogous setting. See 

St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2747 (1993) 

(holding that a Title VII plaintiff always bears the burden of

persuasion despite the presumption in her favor created by her

prima facie case). The Court's treatment of presumptions in

Hicks is consistent with the basic principle, codified in the 

Federal Rules of Evidence:

In all civil actions and proceedings not
otherwise provided for by Act of Congress or
by these rules, a presumption imposes on the
party against whom it is directed the burden
of going forward with evidence to rebut or
meet the presumption, but does not shift to
such party the burden of proof in the sense
of the risk of nonpersuasion, which remains
throughout the trial upon the party on whom
it was originally cast.

Fed. R. Evid. 301.

We are hard-pressed to fathom why IRS enforcement

proceedings should diverge from this principle. It is the IRS,

not the taxpayer, that seeks to invoke the processes of the

court; and, in a related vein, the court is instructed to grant

the requested relief only when "sufficient proof is made."

I.R.C. 7604(b). Though it certainly can be argued that "strong

reasons of public policy" justify a burden-shifting scheme,

Salter, 432 F.2d at 700, it would seem that the IRS's legitimate 

interest in obtaining summary enforcement is satisfactorily

addressed by the particularized burden of production imposed on

10

the taxpayer, without going the whole hog.4 See, e.g., United 

States v. Euge, 444 U.S. 707, 719 (1980) (stating that in 

addition to the taxpayer's right to challenge a summons, the IRS 

"must also establish [its] compliance with the [four recognized]

good faith requirements"); McCarthy, 514 F.2d at 373 (suggesting 

that "the Secretary should be prepared to prove the allegations

of the complaint that the summons complies with the Powell 

requirements").

While this point is intellectually interesting, we

defer a definitive decision on it to a different day. After all,

 

4The cases suggesting that the taxpayer has the ultimate
burden of persuasion rely principally on isolated statements
extracted from Powell and United States v. LaSalle Nat'l Bank, 
437 U.S. 298 (1978). Foremost among these statements is the
Powell Court's comment that "[t]he burden of showing an abuse of 
the court's process is on the taxpayer." 379 U.S. at 58. We are
not confident that this slender reed can bear the strain that
subsequent opinions have placed on it. Powell itself imposed the 
burden on the IRS to "show that the investigation will be
conducted pursuant to a legitimate purpose, that the inquiry may
be relevant to the purpose, that the information sought is not
already within the Commissioner's possession, and that the
administrative steps required by the Code have been followed."
Id. at 57-58. The Court's subsequent reference to proving an 
abuse of process, read in context, seems to be confined to
affirmative defenses, e.g., allegations of harassment in the
conduct of an investigation. See id. at 58. 
By like token, the LaSalle Court's statement that 
"those opposing enforcement of a summons do bear the burden to
disprove the actual existence of a valid civil tax determination
or collection purpose by the Service," 437 U.S. at 316, does
little to prop up the government's burden-of-proof argument. The
LaSalle Court held that, even if the IRS had a criminal 
prosecution in mind, this fact would not constitute a per se
improper purpose for a civil summons, because civil and criminal
tax investigations are typically too intertwined to untangle
easily. See id. at 314-16. Hence, the quoted statement applies 
only in situations where the taxpayer is seeking to avail herself
of the "sole criminal purpose" defense to a summons. See, e.g., 
Copp, 968 F.2d at 1437. 

11

the respondents concede that the district court tacitly required

them to prove improper purpose by a preponderance of the

evidence, and they accepted the burden of proof without any

objection. Consequently, we proceed on the assumption that the

lower court's resolution of the issue will prevail only if the

record suffices for a finding that the respondents carried the

devoir of persuasion.

B. The Finding of Improper Purpose. B. The Finding of Improper Purpose. 

With this structure in mind, we turn to the district

court's determination that the IRS's stated purpose for issuing

the summonses its avowed desire to investigate the respondents'

law firm was merely a pretext to enable it to learn more about

the intervenor.

At the outset, we are constrained to note that the

remarkably thin prima facie case established by Agent Ameno's

declaration provides a shallow foundation for a presumption in

favor of the government. While the declaration touches the

requisite bases it contains the bareboned allegations needed

for the government's prima facie showing it is utterly devoid

of specifics. Though a conclusory affidavit is enough to satisfy

the government's burden at the first tier of the framework, see, 

e.g., Sylvestre, 978 F.2d at 26; Lawn Builders, 856 F.2d at 392, 

it can come back to haunt the proponent if it is not later

supplemented by more hearty fare once the challenger succeeds in

scaling the second tier.

At any rate, the government effectuated its prima facie

12

showing with little room to spare. The burden then shifted to

the respondents to produce evidence and/or allegations of

sufficient force and exactitude to warrant further inquiry. To

meet this burden, the respondents argued that the summonses

should be shelved because the government's professed purpose 

linking the summonses to an investigation into the law firm's tax

liability was pretextual.

Contrary to the government's dismissive suggestion, the

respondents did not simply level the charge. In support of it,

they submitted two affidavits. One affidavit incorporated the

extensive correspondence between the firm and the IRS. The

second affidavit chronicled the firm's meticulous attention to

income reporting requirements, and asserted that the IRS already

had the data it needed to determine whether the firm had fully

complied with its tax-related obligations. In addition, the

respondents documented several public statements which seem to

imply that the IRS's purpose in issuing summonses to attorneys

for the records of large cash-paying clients is designed less to

monitor lawyers' compliance with the tax laws, and more to

address money laundering, narcotics distribution, and kindred

criminal activity on the part of lawyers' clients. See, e.g., 

IRS Publication 1544 (rev. Aug. 1994) (stating that Form 8300 is

intended in part to help identify "smugglers and drug dealers

[who] use large cash payments to `launder' money from illegal

activities"); IRS News Release IR-93-113 (Dec. 7, 1993) ("The

data [obtained through Form 8300] helps detect nonfiling,

13

unreported income, and money laundering often associated with

narcotic trafficking and other illegal activities by some of the

customers and clients of the businesses required to file.").

Finally, the respondents pointed out that the Ameno declaration,

which purported to describe the ongoing investigation of the law

firm, was nothing but boilerplate.5

The lower court concluded on this chiaroscuro record

that the government's supposed investigation of the law firm was

a pretext for an anticipated investigation of John Doe. See 

Gertner, 873 F. Supp. at 734. On appeal, the IRS rides two 

horses into the breach. First, it maintains that the district

court erred in stabling the summonses without holding an

evidentiary hearing. Second, it posits that, in all events, the

court's ultimate finding of pretext, based on the record before

it, is unsupportable. Both steeds are lame.

1. The Need for an Evidentiary Hearing. The 1. The Need for an Evidentiary Hearing. 

government's first question is easily answered. The decision

whether to hold an evidentiary hearing in a given case generally

rests within the sound discretion of the trial court. See, e.g., 

Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 527 (1st Cir. 

1991); United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir. 

1990); United States v. DeCologero, 821 F.2d 39, 44 (1st Cir. 

 

5The declaration matched, almost word for word, the
declaration at issue in United States v. Ritchie, 15 F.3d 592 
(6th Cir.), cert. denied, 115 S. Ct. 188 (1994), and, as the 
government conceded at oral argument, was "the standard
affidavit" that the IRS routinely uses in summons enforcement
proceedings spurred by Form 8300 filings.

14

1987). This discretion remains fully intact when the business of

the day is the enforcement of an IRS summons. See Fortney v. 

United States, 59 F.3d 117, 121 (9th Cir. 1995) ("We defer to the 

district court's discretion to decide if an evidentiary hearing

on the question of enforcement of a summons is warranted.");

Hintze v. IRS, 879 F.2d 121, 126 (4th Cir. 1989) (similar). 

Appellate review is, therefore, deferential; we will interfere

with a district court's bottom-line decision to conduct or

withhold an evidentiary hearing in a summons enforcement

proceeding only if the appellant demonstrates an abuse of the

trial court's substantial discretion. See Copp, 968 F.2d at 1438 

n.1.

We discern no abuse in this situation. At no time

during the proceedings below did the IRS request an evidentiary

hearing. Rather, it vigorously (and successfully) opposed the

respondents' request for such a hearing. In other words, the

government chose to roll the dice, apparently confident that

Agent Ameno's conclusory declaration would withstand the

respondents' allegations and evidence. Having gambled and lost,

the government is in a perilously poor position to pursue the

point. In any event, "[w]e regularly turn a deaf ear to protests

that an evidentiary hearing should have been convened but was

not, where, as here, the protestor did not seasonably request

such a hearing in the lower court." Aoude v. Mobil Oil Corp., 

892 F.2d 1115, 1120 (1st Cir. 1989); see also Sylvestre, 978 F.2d 

at 28 n.3 (explaining that a taxpayer's failure to request an

15

evidentiary hearing in the district court precluded consideration

of his later claim that such a hearing should have been held);

see generally CMM Cable Rep., Inc. v. Ocean Coast Props., Inc., 

48 F.3d 618, 622 (1st Cir. 1995) ("A party who neglects to ask

the trial court for relief that it might reasonably have thought

would be available is not entitled to importune the court of

appeals to grant that relief.").

2. The Supportability of the Crucial Finding. The 2. The Supportability of the Crucial Finding. 

remaining question is whether the district court's finding of

pretextual purpose is supportable. Determining the IRS's purpose

in conducting an investigation is, like most motive-oriented

explorations, a predominantly factbound enterprise. It follows

that, absent a mistake of law, an appellate tribunal should

disturb the district court's determination only if it is clearly

erroneous. See United States v. Ritchie, 15 F.3d 592, 599 (6th 

Cir.), cert. denied, 115 S. Ct. 188 (1994); Copp, 968 F.2d at 

1437; Hintze, 879 F.2d at 1426; Ponsford v. United States, 771 

F.2d 1305, 1307-08 (9th Cir. 1985). This means, of course, that

if there are two or more plausible interpretations of the

evidence, the district court's choice among them must hold sway.

See Johnson v. Watts Regulator Co., F.3d , (1st Cir. 

1995) [No. 95-1002, slip op. at 22].

Here, no clear error looms. The government's case for

enforcing the summonses depended entirely on Agent Ameno's self-

serving declaration (which, as we have previously indicated, is a

16

web of unsubstantiated conclusions). In contrast, the

respondents fashioned a sufficient evidentiary infrastructure to

support an inference that the IRS's sole purpose in pursuing the

summonses was to gain information about the lawyers' unnamed

client. The law firm's affidavit, if credited, indicates that

the IRS had no apparent reason to suspect it of any tax-related

impropriety. And, moreover, the IRS's use of a generic

affidavit, devoid of particularization, suggests that the IRS

never really suspected the firm of any questionable activity.

The IRS's stonewalling its unexplained refusal to answer the

firm's repeated inquiries as to whether it was in fact under

investigation points in the same direction. These facts, taken

in light of the IRS's self-proclaimed practice of using

information gleaned from attorneys' Form 8300 filings as a

vehicle for investigating clients who pay counsel fees in cash,

make the district court's conclusion that the IRS's interest lay

only in the unidentified client seem quite plausible. We 

conclude, therefore, that notwithstanding any presumption which

may have accompanied the IRS's prima facie showing, the court

below reasonably could have found that a preponderance of the

evidence favored the respondents' claim of pretext.6 See 
 

6The government argues that this finding is flatly
inconsistent with the district court's original acceptance of the
Ameno declaration as a sufficient basis for issuing a show-cause
order. We do not agree. The acceptance of the IRS's first-tier
proffer signifies nothing more than the court's acknowledgement
that the IRS has mustered a prima facie showing for enforcement.
Once the respondents met their second-tier burden of production
and raised a legitimate question about the validity of the
summonses, however, the court was free to reevaluate the original

17

Ritchie, 15 F.3d at 599 ("Although there was evidence to 

contradict this view and the IRS strenuously objects to [the

court's] finding, [the] findings are not clearly erroneous, and

we therefore adopt them.").

The government argues that the decision in United 

States v. Tiffany Fine Arts, Inc., 718 F.2d 7 (2d Cir. 1983), 

aff'd, 469 U.S. 310 (1985), should propel us toward the opposite 

conclusion. There, the Second Circuit upheld a summons issued

for the dual purpose of investigating both a designated taxpayer

and a John Doe, see 718 F.2d at 13-14, and the Supreme Court 

affirmed, see 469 U.S. at 324. The government tries to shoehorn 

this case into the Tiffany last. The fit, however, is imperfect. 

In Tiffany, unlike here, the district court ascertained 

as a matter of fact that the IRS had a dual purpose, that is, an

actual interest in the investigation of both the taxpayer and the 

John Doe. See 469 at 317 (recounting district court's findings 

of fact). In this case, the district court ascertained, also as

a matter of fact, that the IRS did not have an actual interest in 

the investigation of the taxpayer (the respondents' law firm),

but only in learning more about John Doe. Thus, the two cases 

are not fair congeners except to the extent that, given Judge

Brody's supportable factual finding that the summonses at issue

here were not dual purpose summonses, the Supreme Court's opinion

in Tiffany clearly indicates that we should respect that finding. 

See id. at 322. And, once the judge determined as a matter of 
 

proffer in light of the respondents' counter-proffer.

18

fact that the government's actual purpose in issuing the

summonses was to further an investigation of the unnamed client,

the follow-on conclusion that the government should have complied

with the procedure for issuing John Doe summonses becomes

irresistible.7 See id. 

We take no pleasure in upholding a finding that

government actors constructed a pretext to avoid due compliance

with statutorily prescribed requirements. But the court below

did not reach this conclusion lightly and the record, carefully

examined, does not give rise to a firm conviction that the

court's judgment is wide of the mark. Accordingly, the finding

of pretextual purpose must stand.

C. The Remainder of the District Court's Decision. C. The Remainder of the District Court's Decision. 

Despite its double-edged determination that the IRS

ought to have complied with the strictures of I.R.C. 7609(f),

but did not do so, the district court proceeded to reach and
 

7At oral argument in this court, the government belatedly
contended that the summonses should be enforced simply to
effectuate compliance with the reporting requirements of section
6050I itself. This nascent contention materialized out of thin
air; prior to oral argument, the government had attempted to
justify the summons solely as a means of investigating whether
the law firm had reported all the income required to be reported.
Since the record reveals beyond hope of contradiction that the
government's newly minted contention was not made below in any
coherent fashion, we will not entertain it here. See United 
States v. Zannino, 895 F.2d 1, 17 (1st Cir.) (discussing a 
litigant's obligation to spell out its arguments squarely and
distinctly in the trial court), cert. denied, 494 U.S. 1082 
(1990); Patterson-Leitch Co. v. Massachusetts Mun. Wholesale 
Elec. Co., 840 F.2d 985, 990 (1st Cir. 1988) (similar). In this 
connection, we remind the government that "[p]assing allusions
are not adequate to preserve an argument in either a trial or an
appellate venue." United States v. Slade, 980 F.2d 27, 30 (1st 
Cir. 1992).

19

resolve the other issues in the case. It is not entirely clear

why the court chose to grapple with these issues. It may have

intended to articulate an alternative ground for rejecting the

summonses, or it may have thought the IRS's failure to comply

with I.R.C. 7609(f) to be a specie of harmless error. We need

not resolve the ambiguity. If the court extended its journey

merely to memorialize a further basis for its decision, the

additional holdings are surplusage and can be disregarded. See 

Kastigar v. United States, 406 U.S. 441, 454-55 (1972) (rejecting 

language "unnecessary to the Court's decision" as binding

authority in subsequent cases). On the other hand, if the court

ventured afield because it concluded that the government's bevue

was harmless, the court miscalculated. We explain briefly.

Congress passed section 7609(f) specifically to protect

the civil rights, including the privacy rights, of taxpayers

subjected to the IRS's aggressive use of third-party summonses.

See S. Rep. No. 938, 94th Cong., 2d Sess. 368 (1976), reprinted 

in 1976 U.S.C.C.A.N. 3439, 3797; H.R. Rep. No. 658, 94th Cong., 

2d Sess. 307 (1975), reprinted in 1976 U.S.C.C.A.N. 2897, 3203; 

see generally Tiffany, 469 U.S. at 315-17 (discussing history of 

7609). Section 7609(f) accomplishes this goal by providing

that a John Doe summons is not valid unless and until it is

authorized by a judicial officer after a hearing (normally an ex

parte hearing, given the nature of the problem). In the court

proceeding, the IRS must establish that:

(1) the summons relates to the
investigation of a particular person or

20

ascertainable group or class of persons,
(2) there is a reasonable basis for
believing that such person or group or class
of persons may fail or may have failed to
comply with any provision of any internal
revenue law, and
(3) the information sought to be
obtained from the examination of the records
(and the identity of the person or persons
with respect to whose liability the summons
is issued) is not readily available from
other sources.

I.R.C. 7609(f).

This requirement of judicial preapproval is an

important component of the statutory scheme; it permits the

district court to act as a surrogate for the unnamed taxpayer and

to "exert[] a restraining influence on the IRS." Tiffany, 469 

U.S. at 321. The statutory protections cannot be cavalierly cast

aside by either the executive or the judicial branch. Hence, if

the enforcement proceeding results in a determination that the

IRS does not in fact intend to investigate a named party, then

the IRS cannot obtain the data it seeks without observing the

mandate of section 7609(f). See id. at 322. 

So it is here. The court below supportably found that

the IRS had no intention of investigating the tax-related

liability of the respondents' law firm. Therefore, the IRS

cannot obtain the identity of the anonymous client John Doe 

by means of these summonses unless and until it runs the section

7609(f) gauntlet. To hold otherwise would be tantamount to

assuming either that section 7609(f) is nugatory or that the IRS

will always be able to fulfill the statute's demands. Such

assumptions have no basis in law or in fact. The John Doe

21

summons procedures represent a basic legislative judgment about

the importance of taxpayers' privacy and other rights and

courts must respect that judgment.

To be sure, the harmless error argument derives a

superficial measure of credibility from Ritchie, a case in which 

the Sixth Circuit held that, despite a finding of pretext, the

IRS did not have to go back through the protocol mandated by

I.R.C. 7609(f). See Ritchie, 15 F.3d at 600. The Ritchie 

court thought that "it would exalt form over substance to make

the IRS go through the motions" required by section 7609(f), only

"to bring us back to where we are now." Id. at 600. Passing 

over the court's somewhat casual view of the protections afforded

by the John Doe summons procedures,8 and without ruling out any

possibility of harmless error in this context, we think that

under section 7609(f) form is substance, and that the procedure 

mandated by Congress generally must be followed.

In all events, Ritchie is plainly distinguishable. 

There, unlike here, an evidentiary hearing had been held, the

statutory protections had been afforded "in spirit" if not

literally, and the record contained sufficient information to

persuade the court that the IRS had met "the substantive factors
 

8Ritchie suggests that the "statutory protections are not 
strong in any event." 15 F.3d at 600 n.8. But strength and
weakness are relative concepts, and section 7609(f) is not
totally devoid of muscle. Among other things, the requirement
that the IRS have a "reasonable basis for believing" that the
unidentified taxpayer may have violated internal revenue laws,
I.R.C. 7609(f)(2), differs significantly from the minimal
showing the IRS must make under Powell to obtain judicial 
enforcement of other kinds of summonses.

22

of 7609(f)." Ritchie, 15 F.3d at 600. We have no comparable 

record before us, and no basis to assume that the IRS ultimately

will pass the statutory test. In particular, among the other

requirements for a John Doe summons, the IRS must demonstrate

that it possesses a reasonable basis for believing that the

unnamed taxpayer may have failed to comply with the tax laws.

See I.R.C. 7609(f)(2). In this case, we have only Agent 

Ameno's conclusory declaration, directed on its face at the

respondents (not at John Doe). If this were sufficient to

satisfy the imperatives of section 7609(f), then judicial

preapproval would become a charade, and section 7609(f) a dead

letter.9

We need go no further. Any way we look at the

situation, the district court's views as to the applicability vel 

non of the attorney-client privilege are not necessary to the 

result. Consequently, we have no occasion to consider the

correctness of the court's conclusions on those issues.

III. CONCLUSION III. CONCLUSION

The district court's finding that the summonses were

not drawn in connection with a probe of the law firm's tax-

related liability, but, instead, for the clandestine purpose of
 

9We note, too, that the Sixth Circuit explicitly warned the
IRS that it was issuing a "one-time only" free pass. See 
Ritchie, 15 F.3d at 600 ("We are not suggesting that the IRS may 
in the future avoid going through the ex parte proceeding
required by 7609(f), for now the IRS has fair notice that if it
cannot demonstrate a bona fide interest in investigating the tax
liability of the party summoned, it must comply with 
7609(f)."). The government cannot legitimately expect another
free pass this time around.

23

investigating the lawyers' unnamed client, John Doe, is

supportable. This means that the government is legally bound to

follow the prescribed procedure for the service of John Doe

summonses. See I.R.C. 7609(f). It has not done so. Summons 

enforcement should be denied for that reason, and that reason

alone.

We are mindful that restricting our disposition to this

narrow ground leaves larger issues unresolved, see, e.g., United 

States v. Sindel, 53 F.3d 874, 877-78 (8th Cir. 1995) (discussing 

ethical implications and applicability of attorney-client

privilege in 6050I summons enforcement proceeding brought after

attorney withheld client's identity); United States v. Leventhal, 

961 F.2d 936, 940-41 (11th Cir. 1992) (similar); United States v. 

Goldberger & Dubin, P.C., 935 F.2d 501, 503-06 (2d Cir. 1991) 

(similar), and that these issues are freighted with consequence.

But courts must resist the temptation to pluck issues from the

stalk before their time. The judicial task, properly understood,

should concentrate on those questions that must be decided in

order to resolve a specific case. This is especially true when

unsettled issues of broad public concern are afoot. See Eccles 

v. Peoples Bank, 333 U.S. 426, 432 (1948) (Frankfurter, J.); 

Ashwander v. TVA, 297 U.S. 288, 345-48 (1936) (Brandeis, J., 

concurring). In this sense, the science of horticulture is like

the art of judging: yearning for the blossom when only the bud

is ready enhances the growth of neither the flower nor the law.

24

Affirmed. Affirmed. 

25